## Richmond.

RAILWAY EXPRESS AGENCY, INC. v. COMMONWEALTH,
EX REL. STATE CORPORATION COMMISSION.

November 14, 1929.

500

The opinion states the case.

*Wyndham R. Meredith,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General,* for the Commonwealth.

CAMPBELL, J., delivered the opinion of the court.

This is an appeal from an order of the Corporation Commission denying the plaintiff in error, a foreign corporation, a certificate of authority to engage in

intrastate express business in this State. Pursuant to section 156 of the Constitution 1902, the facts are certified by the Chairman of the Corporation Commission.

Plaintiff in error is a corporation chartered under the laws of the State of Delaware. Under its certificate of incorporation, plaintiff is not only empowered to engage in interstate, intrastate and international express business, but to own, construct, purchase, lease, or otherwise acquire, and to use, equip, repair, supply and maintain railway cars, rolling stock and machinery of all kinds, wagons, trucks, motor vehicles, air planes and all other means and instrumentalities, ice houses, ice factories, refrigerating plants, warehouses and storage plants, garages, stables, hangars, etc.; to buy and hold personal property of every character and description "without restriction or limit as to amount"; to acquire and dispose of real property without limitation as to location or jurisdiction; to engage in manufacturing business and to acquire and develop manufacturing plants; to acquire and deal in copyrights, trade marks, patent rights, patent processes, etc.; to acquire and hold for investment or otherwise the shares of the capital stock or bonds, etc., of any corporation or corporations wherever organized, and also the bonds of the United States, or of any State in its political subdivisions. It is further authorized to organize subsidiary corporations to accomplish the purpose or objects for which it was incorporated; to loan money and to carry on any other lawful business "whatsoever which may seem to the board of directors of this corporation appropriate to be carried on in connection with the above purposes or calculated directly or indirectly to promote the interest of this corporation or enhance the value of its properties."

It is then provided: "The foregoing clauses shall be construed both as objects and powers; and it is hereby expressly provided that the foregoing enumeration of specific powers shall not be held to limit or restrict in any manner the powers of this corporation."

No question of the right of plaintiff in error to do an interstate express business in this State is involved in this appeal. Under the plain provisions of the interstate commerce clause of the Federal Constitution, the State has no power to prohibit plaintiff from engaging in interstate commerce. The refusal of the Corporation Commission to grant the certificate of authority applied for is based solely on the alleged prohibition contained in section 163 of the State Constitution, which reads as follows:

"No foreign corporation shall be authorized to carry on, in this State, the business, or to exercise any of the powers or functions, of a public service corporation, or be permitted to do anything which domestic corporations are prohibited from doing, or be relieved from compliance with any of the requirements made of similar domestic corporations by the Constitution and laws of this State, where the same can be made applicable to such foreign corporation without discriminating against it. But this section shall not affect any public service corporation whose line or route extends across the boundary of this Commonwealth, nor prevent any foreign corporation from continuing in such lawful business as it may be actually engaged in within this State, when this Constitution goes into effect; but any such foreign public service corporation, so engaged, shall not, without first becoming incorporated under the laws of this State, be authorized to acquire, lease, use or operate, within this State, any public or muni-

cipal franchise or franchises in addition to such as it may own, lease, use or operate, when this Constitution goes into effect."

It is the contention of the plaintiff in error that while it is a corporation chartered by the State of Delaware, it is in fact a joint facility of the railroads now doing a freight business in the State, and that this being true, a certificate of authority to it to do an express business would be merely granting authority to those railroads doing business in the State which come within the provisions of section 163.

It appears from the statement of facts certified by the Commission pursuant to the provisions of section 156 of the Constitution 1902, that plaintiff in error received its charter in 1928, and while it has acquired certain rights and property of the American Railway Express Agency which was incorporated in 1918, and has acquired by agreement the right to operate over designated lines of railroads in Virginia which were in existence in 1902 when the Constitution became effective, it does not appear that plaintiff in error is the corporate successor of any of those railroads whose line or route extended across the boundary of the Commonwealth in 1902.

The fact that plaintiff in error did not have a line or route extending across the boundary of the State when the Constitution became effective is conclusive that it must come within the provisions of section 163, as a corporate successor of those corporations operating under that section. Unless we can construe the word "corporation," as used in section 163, to mean "business," then the facts are against the contention of plaintiff in error.

The word "corporation," as employed in the Constitution, is employed in a technical sense and does

not fall within the general classification of the term "business." In order to become the corporate successor of the railroads, plaintiff in error must "stand in the shoes" of those corporations, and while accepting the benefits as such successor, it must also bear the burdens imposed by the State statutes.

■ Plaintiff in error, in our view, is a separate and distinct corporation from the agreeing railroad companies. Under the broad scope of the delegated powers contained in its certificate of incorporation, if once it should gain the privilege of doing an express business, without incorporating under the State law, it, under its charter, is empowered to engage in the sale of real and personal property, to "engage in any kind of manufacturing business," to acquire and sell mortgages, stocks and bonds, to acquire and deal in copyrights, trade marks, patent rights and to loan money. Such powers are not consonant with the powers generally accorded to common carriers of either interstate or intrastate commerce, and the exercise by the plaintiff in error of such powers under the guise of engaging in the express business as an agency of the railway companies, without being amenable to the statutes regulating similar corporations, would afford it an unwarrantable advantage.

■ It is a further contention of plaintiff in error that in any event it is entitled to a certificate of authority to do an intrastate express business because it is a corporation which has recently acquired the right to operate over lines and routes of railroads which extend across the boundary of the Commonwealth, and, therefore, is excepted from the operation of the provisions of section 163 of the Constitution 1902, by virtue of this language: "But this section shall not affect any public service corporation whose line or route extends

across the boundary of this Commonwealth, nor prevent any foreign corporation from continuing in such lawful business as it may be actually engaged in within this State, *when this Constitution goes into effect* \* \*." (Italics added.) The basis of the contention is that the language "extends across the boundary of this Commonwealth" does not mean "extends across the boundary of this Commonwealth at the time this Constitution goes into effect," but is to be construed as if it read, "shall at the time this Constitution goes into effect, or at any time thereafter, extend across the boundary of this Commonwealth."

In an able opinion, delivered by Chairman Epes, the commission answers this contention and gives to section 163 of the Constitution 1902 this construction: "We think the true construction of section 163 is that 'This section shall not affect any public service corporation whose line or route extends across the boundary of this Commonwealth when this Constitution goes into effect.' Only those foreign public corporations are excepted from the prohibition of section 163 whose line or route extended across the boundary of this Commonwealth at the time the Constitution of 1902 went into effect, or which were then engaged in doing a lawful business in the State of Virginia. The Railway Express Agency, Inc., falls in neither of these classes, and is, therefore, prohibited by section 163 from doing in Virginia any intrastate express business, though it has the unquestioned right to do therein interstate express business.

"The language, 'whose line or route extends across the boundary of this Commonwealth' itself speaks as of the date the Constitution becomes effective. In addition to this, the clause, 'when this Constitution goes into effect' modifies the clause, 'any

public service corporation whose line or route extends across the boundary of this Commonwealth,' as well as the clause, 'such lawful business as it may be engaged in within this State.' We think that the language, context, punctuation, and the object which it is evident the framers of the Constitution sought to attain support the construction that the only foreign public service corporations excepted from the prohibitions of section 163 are such as had lines or routes extending across the boundary of Virginia when the Constitution went into effect in 1902 or were then doing in Virginia a lawful business."

We are in accord with the Commission's construction of section 163. This, as we conceive it from an examination of the journal, was in effect the construction of Hon. A. Caperton Braxton, a learned lawyer, a member of the Constitutional Convention, and author of the provision involved. Our position that section 163 has been correctly construed is strongly fortified by a construction of it by Chief Justice Prentis, who in the year 1914, as chairman of the Corporation Commission, similarly construed this section.

In 1914, Wells, Fargo & Company Express, a foreign corporation which neither had a line nor route extending across the boundary of the Commonwealth, applied to the Commission for a certificate of authority to engage in intrastate express business. Though the company complied in all respects with the provisions of section 3847 of the Code of Virginia, a certificate of authority to do an intrastate express business in the State, without first securing a charter of incorporation, was denied. The reasons for the refusal are stated in the following letters:

"June 9, 1914.

"CHAS. W. STOCKTON, ESQ., General Counsel,
   "Wells, Fargo & Company Express,
      "New York City.
"MY DEAR SIR:
   "Your letter of June 8th, addressed to the clerk of this Commission, has been referred to me.

   "Replying thereto I would say that under the Virginia Constitution, section 153, express companies are public service corporations, and under section 163 foreign corporations are forbidden to exercise any of the powers or functions of public service corporations. So that it will be impossible for Wells, Fargo & Company Express to conduct its business in this State. The only way by which it could be done would be to organize a Virginia corporation, all of the stock of which could be held by Wells, Fargo & Company Express, the foreign corporation.

                    "Very truly yours,
                         "CHAIRMAN."

                              "June 26, 1914.

"CHAS. W. STOCKTON, ESQ., General Counsel,
   "Wells, Fargo & Company Express,
      "New York City.
"MY DEAR SIR:
   "I have your letter of June 20th, enclosing brief with reference to the desire of Wells, Fargo & Company to engage in intrastate express business in Virginia.

   "Replying thereto I would say that recognizing the force of your brief and the authority upon which you rely—*Western Union Telegraph Company* v. *Kansas*, 216 U. S. 163, 216 W. S. 1, 30 S. Ct. 190, 54 L. Ed. 355 —I write to say that as at present advised this Commission will take no step to prevent Wells, Fargo & Company Express, from taking over the business of the United States Express Company in this State on July 1st.

It must not be understood, however, that this Commission concedes the right of the company to do any intrastate business whatever. It must be further understood that this Commission does not, either for its present or future membership, waive any legal right or authority to enforce any or all of the Virginia statutes which may be violated by Wells, Fargo & Company, Express in connection with such intrastate business as it proposes to do.

"We note that there are some Virginia statutes to which you allude in your brief which you appear to concede the State's power to enforce, and I presume it is your purpose to comply with these statutes.

"Very truly yours,

"CHAIRMAN."

With but two exceptions (when in our opinion the Commission erroneously granted certificates of authority), this construction has been consistently followed.

■ Plaintiff in error further contends that when chapter 158 of the Code of 1919 (section 4027, *et seq*) is looked to, its right to operate in this State without domesticating is clear, and that a refusal to permit such operation is to declare unconstitutional this chapter of the Code.

We do not think chapter 158 of the Code is involved in this appeal, and therefore do not deem it necessary to discuss it.

■■ It is finally contended that to refuse to permit plaintiff in error to engage in intrastate business over the lines of railroad specified would. be in violation of the fourteenth amendment to the Federal Constitution, for the reason that it would be a denial of that equal protection of the law guaranteed by the Federal Constitution.

The effect of the refusal of the State Corporation

Commission to grant to the express company a certificate of authority to do an intrastate business in the Commonwealth is but putting into execution the statutory regulations applicable to all foreign corporations which seek to enter the State and engage in competition with domestic corporations engaged in a similar business. There is no effort to deny to plaintiff that right guaranteed both by the State and Federal Constitutions to engage in interstate commerce. It is the policy of this State to open wide its doors that capital may find a secure investment in industries under the protection of its laws; but the law is well settled that the entrance into the State by a foreign corporation for the purpose of doing business therein, is not an arbitrary right. The State, under the powers expressly reserved under the Federal Constitution, has the power to impose conditions. The only condition here imposed is that the foreign corporation must stand, not above, but on a parity with those domestic corporations which pay taxes to the State for the protection afforded them, and are willing to submit themselves to the jurisdiction of its courts.

In *Hemphill* v. *Orloff*, 277 U. S. 537, 48 S. Ct. 577, 579, 72 L. Ed. 978, it is said: "It is settled doctrine that a corporation organized under the laws of one State may not carry on local business within another without the latter's permission, either express or implied. A corporation is not a mere collection of individuals capable of claiming all benefits assured them by section 2, article 4, of the Constitution."

In *Ashley* v. *Ryan*, 153 U. S. 436, 14 S. Ct. 865, 866, 38 L. Ed. 773, several railroad corporations existing under the laws of separate States consolidated into one corporation. The statute of Ohio in which such consolidated corporation operated in part imposed a

charge upon the consolidated company of a percentage of its authorized stock as the fee of the State for the filing of the articles of consolidation in the office of the Secretary of State of Ohio, without which filing it could not possess the powers, immunities and privileges which appertain to a corporation in that State. It was contended that this fee was a tax on interstate commerce, the consolidated carrier being engaged therein, or a tax on the right to carry on same, or on the instruments thereof. In denying this contention, the Supreme Court said:

"The purpose of the tender of the articles of consolidation to the Secretary of State was to secure to the consolidated company certain powers, immunities and privileges which appertain to a corporation under the laws of Ohio. The rights thus sought could only be acquired by the grant of the State of Ohio, and depended for their existence upon the provisions of its laws. Without that State's consent they could not have been procured. Revised Statutes of Ohio, sections 3239, 3382 and 3384b, amended by act of April 11, 1890 (87 Ohio Laws, 183 [184]). Hence, in seeking to file its articles of incorporation, the company was applying for privileges, immunities and powers which it could by no means possess, save by the grace and favor of the Constitution of the State of Ohio and the statutory provisions passed in accordance therewith. At the time the articles were presented for filing, the statute law of the State charged the parties with notice that the benefits which it was sought to procure could not be obtained without payment of the sum which the Secretary of State exacted. As it was within the discretion of the State to withhold or grant the privilege of exercising corporate existence, it was, as a necessary resultant, also within its power to impose

whatever conditions it might deem fit as prerequisite to corporate life. The act of filing, constituting, as it did, a claim of a right to the franchise granted by the State law, carried with it a voluntary assumption of any burden with which the privilege was accompanied, and without which the right of corporate existence could not have been procured. We say *voluntary* assumption, because, as the claim to the franchise was voluntary, the assumption of the privilege which resulted from it partook necessarily of the nature of the claim for corporate existence. Having thus accepted the act of grace of the State and taken the advantages which sprang from it, the company cannot be permitted to hold on to the privilege or right granted, and at the same time repudiate the condition by the performance of which it could alone obtain the privilege which it sought.

"That the right to be a State corporation depends solely upon the grace of the State, and is not a right inherent in the parties is settled."

In *Pembina Con. Silver Mining, etc. Co.* v. *Pennsylvania*, 125 U. S. 189, 8 S. Ct. 737, 741, 31 L. Ed. 650, the court said: "The State is not prohibited from discriminating in the privileges it may grant to foreign corporations as a condition of their doing business or hiring offices within its limits, provided always such discrimination does not interfere with any transaction by such corporations of interstate or foreign commerce. It is not every corporation, lawful in the State of its creation, that other States may be willing to admit within their jurisdiction or consent that it have offices in them; such, for example, as a corporation for lotteries. And even where the business of a foreign corporation is not unlawful in other States the latter may wish to limit the number of such corporations, or

to subject their business to such control as would be in accordance with the policy governing domestic corporations of a similar character. The States may, therefore, require for the admission within their limits of the corporations of other States, or of any number of them, such conditions as they may choose, without acting in conflict with the concluding provision of the first section of the fourteenth amendment. * * *

■ "The only limitation upon this power of the State to exclude a foreign corporation from doing business within its limits, or hiring offices for that purpose, or to exact conditions for allowing the corporation to do business or hire offices there, arises where the corporation is in the employ of the Federal government, or where its business is strictly commerce, interstate or foreign. The control of such commerce, being in the Federal government, is not to be restricted by State authority."

No insurmountable obstacle stands in the way of plaintiff in error, if it desires to do intrastate business in this State. It may organize a corporation under the laws of the Commonwealth to do intrastate business, and if it desires to do so then merge with such domestic corporation under the provisions of sections 3821–3827 of the Code of Virginia 1924.

The order of the commission is affirmed.

*Affirmed.*