# Richmond

## RAILWAY EXPRESS AGENCY, INC. v. COMMONWEALTH OF VIRGINIA.

### March 9, 1953.

### Record Nos. 4036, 4037.

### Present, All the Justices.

The opinion states the case.

*Hunton, Williams, Anderson, Gay and Moore, Thomas B. Gay, H. Merrill Pasco, J. H. Mooers, W. H. Waldrop* for appellant.

*J. Lindsay Almond, Jr., Attorney General* and *Henry T. Wickham, Assistant Attorney General, Norman S. Elliott,* for appellee.

SMITH, J., delivered the opinion of the court.

The appellant, Railway Express Agency, Incorporated, filed two applications with the State Corporation Commission seeking the correction of assessments of State taxes made against it by the Commission and the refund of taxes paid for 1950 of $70,665.68 and for 1951 of $66,454.71, which taxes were measured by gross receipts from business done in Virginia under the provisions of Code, § 58-547[1]. The applications were made on the ground that the assessments were invalid, because they constituted a burden on interstate commerce in violation of the Commerce Clause of the Federal Constitution, art. 1, § 8, cl. 3.

The appellant contends that § 58-547 imposes a license tax upon the privilege of carrying on a business exclusively interstate in character and, therefore, is violative of the Federal Constitution; that the apportionment formula provided in § 58-547 is invalid; and that, if the tax assessed under § 58-547 is a property tax, the appellant has no going concern value on which such a tax could lawfully be levied.

---

[1] "§ 58-547. Annual license tax.—Every such company, [express company] for the privilege of doing business in this State, in addition to the annual registration fee and the property tax as herein provided, shall pay an annual license tax as follows:

"The tax shall be equal to two and three-twentieths per centum upon the gross receipts from operations of such companies and each of them within this State. When such companies are operating partly within and partly without this State, the gross receipts within this State shall be deemed to be all receipts on business beginning and ending within this State and all receipts earned in this State on business passing through, into or out of this State; provided, unless otherwise clearly shown, such last-mentioned receipts shall be deemed to be that portion of the total receipts from such business which the entire mileage over which such business is done bears to the mileage operated within this State.

"The provisions of this section shall apply to the assessment for the tax year nineteen hundred forty-nine and annually thereafter, unless otherwise provided by law. (1919, p. 69; 1926, p. 955; 1928, p. 150; Tax Code, § 219; 1948, p. 924.)"

Railway Express Agency, Incorporated, a Delaware corporation, is engaged in the handling and transportation of goods, wares and merchandise in express service in both interstate and intrastate commerce in the District of Columbia and in all the States of the Union except Virginia, where it does solely an interstate business. Its intrastate express business in this State is carried on by a wholly-owned subsidiary, Railway Express Agency, Incorporated, of Virginia, a Virginia corporation, organized on October 20, 1931, following the affirmance by this court[2] of an order of the State Corporation Commission which denied the appellant the authority to do an intrastate express business in this State.

The application for correction of assessment and refund of taxes paid for the year 1950 was dismissed by the Commission, because it was not filed within the time prescribed by Code, § 58-672, the Commission therefore being without jurisdiction to grant the relief requested. The appellant contended before the Commission, as it does here, that Code, § 58-1122 provides an alternative procedure under the terms of which its application was filed within the time provided.

It is not, however, necessary for us to decide whether the petition was timely filed; for even if we assume that the appellant has proceeded correctly under a proper statute, it is not entitled to the relief sought for the reasons hereinafter stated.

The Commission also denied the relief sought in the case of the 1951 assessment, holding that its decision was governed by *Commonwealth* v. *Balto. Steam Packet Co.*, 193 Va. 55, 68 S. E. (2d) 137, *app'l dismissed*, 343 U. S. 923, 72 S. Ct. 763, 72 S. Ct. 764, 96 L. ed. 1335.

The *Balto. Steam Packet* case arose out of appeals by the Commonwealth of Virginia from two adverse decisions of the State Corporation Commission which held invalid the State taxes assessed under the provisions of Code, § 58-575 against two steamship companies, which taxes were measured by gross receipts from interstate business done in Virginia. The steamship companies were engaged in both interstate and intrastate commerce, although their intrastate commerce produced only a small fraction of their total revenue. The principal issue in the case centered on the taxpayers' contention that the taxes

---

[2] *Ry. Ex. Agy.* v. *Commonwealth*, 153 Va. 498, 150 S. E. 419, *aff'd*, 282 U. S. 440, 51 S. Ct. 201, 75 L. ed. 450.

assessed on receipts from interstate commerce apportioned to business done in this State was a violation of the Commerce Clause. The steamship companies argued that the tax was an annual license tax levied on their gross receipts for the privilege of doing an interstate business in this State and they pointed to the language of § 58-575 which did, at that time, denominate the tax an annual license "for the privilege of doing business in this State."

After discussing the pertinent decisions of the Supreme Court of the United States dealing with the very controversial subject of State taxation as a burden on interstate commerce, we decided in the *Balto. Steam Packet* case that if a tax "is in substance and effect a fairly apportioned tax on property, it is valid." In answer to the question then presented—What kind of tax is levied by § 58-575?—we pointed out in the course of our opinion that it is the operation of the statute and not its descriptive label that governs the character of a tax and concluded that § 58-575 provides for a property tax, not a license tax for the privilege of doing business, in these words: "In its derivation and substance it is a tax on an element of value of the physical properties not reached by the tax levied by the localities, but reserved to the State and not otherwise taxed." 193 Va. at p. 70. This holding was based on analysis of the numerous decisions of the Supreme Court of the United States discussed in the opinion which recognize the principle that the going concern value of a business is taxable although the individual physical properties from which it arises are used in interstate commerce.

The appellant filed a brief as *amicus curiae* in the *Balto. Steam Packet* case wherein it vigorously upheld the contention of the taxpayers that the tax levied under § 58-575 was invalid. At the oral argument of the case at bar it conceded that this case is on all fours with the case involving the water carriers except that the appellant here does no intrastate business.

In *Spector Motor Service* v. *O'Connor,* 340 U. S. 602, 71 S. Ct. 508, 95 L. ed. 573, the rule is laid down that a State tax upon the privilege of carrying on a business exclusively interstate in character violates the Commerce Clause no matter how fairly it is apportioned to business done within the State.

However, the tax levied under the provisions of Code, § 58-547 is not a tax upon the privilege of carrying on a business

exclusively interstate in character. Like the tax imposed by Code, § 58-575, which we considered in the *Balto. Steam Packet* case, it is an intangible property tax based on the augmentation in value of the physical assets of the taxpayer arising out of the use of these physical assets as a unit of commerce; this added value being measured by the volume of business done in this State. The physical assets of a taxpayer are said to have a dual value when used in an established going concern; a dead value, or the value of the bare tangible properties themselves; and a live value, or the intangible value which is created by the concerted utilization of the congeries of unrelated items. See *Galveston, etc., R. Co.* v. *Texas,* 210 U. S. 217, 28 S. Ct. 638, 52 L. ed. 1031; *Richmond* v. *Commonwealth,* 188 Va. 600, 50 S. E. (2d) 654.

██ The appellant argues that the action of the General Assembly in amending § 58-575 (applicable to steamship and other water carriers) the month following the decision of this court in the *Balto. Steam Packet* case definitely established the legislative intent to impose that tax as a privilege rather than as a property tax. See Acts of 1952, ch. 486, p. 780. The amendment of § 58-575 deleted the words "for the privilege of doing business in this State," and then went on to make the tax applicable only to gross receipts derived from intrastate business. We do not see any indication in this amendment of a legislative intent to change the nature of the tax as defined by this court immediately prior to the amendment. For reasons sufficient unto itself, perhaps to encourage the development of the harbors and waterways of Virginia or because for many years the tax on interstate receipts had not been enforced, the legislature changed the law as it applied to steamship and other water carriers, but made no changes in the almost identical statute which applies to express companies. And this was done notwithstanding the fact that the legislature had before it the decision in the *Balto. Steam Packet* case which stated in the following language that the rule of the case as regards steamship and other water carriers would also apply to express companies:

"In the case of steamship companies (and also express companies) the tax is denominated a license tax, and the requirement is that every such company shall pay it 'for the privilege of doing business in this State, in addition to the

annual registration fee and property tax.' But what it is called is not necessarily what it is.'' 193 Va. at p. 68.

Furthermore, says the appellant, if the gross receipts taxes imposed by § 58-547 (express companies) and § 58-575 (steamship and other water carriers) are in fact property taxes, then § 58-575, as amended in 1952, fails to tax the going concern value which is produced by the interstate business of steamship and other water carriers and consequently is in conflict with § 168 of the Constitution of Virginia which provides that ''All property, except as hereinafter provided, shall be taxed''; there being no subsequent provision of the Constitution exempting the property of steamship and other carriers. If, on the other hand, continues the appellant, these taxes are privilege taxes, the 1952 amendment of § 58-575 results in no unlawful attempt to exempt property from taxation.

Of course, we do not have before us the question whether § 58-575 violates § 168 of the Constitution, but merely the argument that if § 58-547, and § 58-575 as amended, impose property taxes, the latter is in conflict with § 168 of the Constitution. When we are confronted with the question of the constitutionality of the 1952 amendment of § 58-575 we will deal with it.

Continuing its argument as to the nature of the tax imposed by § 58-547, the appellant contends that if the taxes levied by the State on the gross receipts of public service corporations are property taxes on the going concern value of such taxpayers rather than privileges taxes, then such taxes are violative of § 171 of the Constitution of Virginia to the extent that they are levied on the going concern value produced by or derived from the physical properties of such corporations, since property of this class and kind is specifically segregated to the localities for taxing purposes. However, as heretofore stated, the *Balto. Steam Packet* case held specifically that the tax involved was a State tax on *intangible* property which is measured by the gross receipts derived from the use of the physical properties which are taxed by the localities. Intangible property is not segregated to the localities, but is a proper subject of State taxation.

The appellant also asserts the invalidity of the tax on the ground that the apportionment formula provided in § 58-547 is an improper fraction, its numerator being larger than its denominator, with the result that if the formula were applied as

written, the State would subject to the tax more than 100% of the total gross receipts of the appellant, regardless of where earned. And it was mandatory, continues the appellant, to use the formula in computing the tax, because nowhere in the record are the gross receipts from business done in Virginia clearly shown.

The identical type of fraction was contained in § 58-575, prior to the 1952 amendment, and the same argument was used in the *Balto. Steam Packet* case  Neither in that case nor the one now before us was the formula used in computing the tax complained of. The 1950 tax herein involved was paid under a form of protest which included this sentence: "The $3,286,-775.70 reported as 'All Receipts earned in Virginia on business passing through, into or out of this State,' is computed in accordance with an understanding had with the State Corporation Commission of Virginia, and is made without prejudice to the protest of this Company against any tax being levied upon, or measured by such receipts." A similar provision was included in the protest filed with the payment of the 1951 tax. The opinion of the Commission states that it has acquiesced in the view that because the density of express traffic is greater in other parts of the country than in Virginia, it would not be fair to the taxpayer to employ the formula based on mileage. The opinion further states that "The statutory formula (with the fraction turned right side up) produces the maximum tax, the formula under which the tax complained of was assessed produces the minimum tax, and the correct measure of receipts actually earned within the State lies somewhere between the two. The taxpayer cannot be heard to complain that the tax is too low." The appellant states in the aforesaid form of protest that it has no way of ascertaining how much of its receipts is applicable to business passing through, into or out of this State. Section 58-547 provides that if the actual receipts from business done in Virginia are not clearly shown, the amount applicable to the tax shall be computed according to the formula. The formula was not used in this case because, in the opinion of the Commission, it would have been inequitable to apply it. Instead a method was used which the appellant prefers to call an "understanding" between it and the Commission which resulted in a tax admittedly lower than it would have been had the formula been used. In fact, the Commission

asserts that the tax assessed is less than it would have been even if the appellant had been able to compute its gross receipts resulting from business done in this State. It is not necessary in this case to resort to the formula to compute the tax. Mr. Justice Buchanan in the *Balto. Steam Packet* case called attention to the improper fraction, its numerator being greater than its denominator and said, "That, of course, was not intended." Section 58-575 there referred to has since been amended as pointed out before. The attention of the General Assembly is again called to this matter.

As its final argument the appellant contends that if the tax is a property tax rather than a license tax appellant's property has no going concern value in the generally accepted sense of that term, hence there is no intangible value on which the tax herein complained of can lawfully be levied. In short, if this is a property tax, appellant has no property of the type subject to it.

All of the appellant's capital stock is owned by sixty-eight railroad companies and it follows that the policies of the appellant, including the fixing of rates, are determined by the stockholding railroad companies, subject of course to governmental regulation.

The appellant's going concern value, or lack of it, was not an issue before the State Corporation Commission. The question was not raised in the appellant's applications, nor was it mentioned at the hearing before the Commission or in the appellant's memorandum submitted for the Commission's consideration. Naturally, it was not discussed in the Commission's opinion and the question has at no time been considered by the Commission. However, Commissioner Catterall said in the opinion of the Commission while discussing intangible property values: "An express company with a nation-wide monopoly enjoys valuable good will. The going concern value of its property greatly exceeds the value of its real estate and trucks. And that going concern value is of course intangible property. The nature of that property has been described by the Supreme Court in *Adams Express Company* v. *Ohio,* 166 U. S. 185, 41 L. ed. 965 (1897) * * *." Thus, that judicial tribunal on the facts before it held that the express company had a going concern value.

Finally, as we have said before, the steamship companies

in the *Balto. Steam Packet* case contended that Code, § 58-575 was invalid because it violated the Commerce Clause. No question was raised in that case about the tax on business beginning and ending in this State. The companies paid the tax on their intrastate business without question. The challenge was directed to the tax on all receipts earned in this State on business passing through, into or out of this State. Thus, the only gross receipts considered were those derived from interstate commerce. In the instant case the only business taxed under § 58-547 was interstate business, for the appellant did no intrastate business. The issue, therefore, presented in the case of the steamships and the case at bar, is the same and arose under statutes almost identical in language and operation.

Under the decision of the *Balto. Steam Packet* case, it is clear that the provisions of § 58-547 impose a valid property tax on the appellant measured by the gross receipts earned on business done in Virginia.

It follows from what has been said that the orders of the Commission appealed from are affirmed.

*Affirmed.*