# Richmond

## Railway Express Agency, Incorporated v. Commonwealth of Virginia.

December 2, 1957.

Record No. 4742.

Present, All the Justices.

The opinion states the case.

*Thomas B. Gay* (*Robert J. Fletcher; William H. Waldrop, Jr.; H. Merrill Pasco; Hunton, Williams, Gay, Moore & Powell,* on brief), for the appellant.

*Frederick T. Gray, Special Assistant Attorney General* (*J. Lindsay Almond, Jr., Attorney General; Williams, Mullen, Pollard & Rogers,* on brief), for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

This is an appeal from an order of the State Corporation Commission which denied the application of the appellant made under § 58-672 of the Code for correction and refund of the franchise tax assessed against it by the Commission for the year 1956, pursuant to amended Article 4, Chapter 12, Title 58, § 58-546 through § 58-555 of the Code, as amended by Acts 1956, ch. 612, p. 964. The Code sections material to this controversy appear below.[1] In its opinion

[1] "§ 58-546. Franchise tax on express companies.—Each express company doing business in this State shall, on or before the first day of June of each year, pay to the State a franchise tax which shall be in lieu of taxes upon all of its other in-

filed in support of its order, as required by § 156 (f) of the Virginia Constitution, the Commission held that the tax imposed by these sections was a property tax on intangible property of the appellant, in lieu of other property taxes, and not prohibited by the United States Constitution.

In its Annual Report for 1956, required by the Commission pursuant to § 58-548, the appellant, in response to the inquiry on the form furnished it by the Commission as to what receipts were by it "earned in Virginia on business passing through, into or out of this State," answered "None", and attached a statement saying, in part, "This Company does solely an interstate express business in Virginia and has no way of determining what part of the receipts derived by it from such business was earned 'in business passing through, into or out of this State'."

The Commission thereupon, as directed by § 58-549, proceeded to "make the assessments upon the best and most reliable information that it can procure". By a method of calculation shown in the record it determined the appellant's gross receipts from business passing

tangible property and in lieu of property taxes on its rolling stock."

"§ 58-547. Amount of franchise tax.—The franchise tax shall be equal to two and three-twentieths per cent of the gross receipts derived from operations within this State. If its operations are partly within and partly without this State, the gross receipts derived from operations within this State shall be deemed to be all receipts on business beginning and ending within this State and all receipts derived from the transportation within this State of express transported through, into, or out of this State."

"§ 58-548. Annual report.—Each express company shall report annually on or before the fifteenth day of April to the Commission on forms furnished by the Commission the facts called for on the forms to enable the Commission to assess the annual franchise tax and the value and location of its real estate and tangible personal property other than rolling stock belonging to it as of the beginning of the first day of January preceding."

"§ 58-549. Assessments by Commission.—The Commission shall, after thirty days' notice previously given by it to the company, assess the franchise tax and the value of the real estate and tangible personal property other than rolling stock. Should any company fail to make the report required by this article on or before the fifteenth day of April the Commission shall make the assessments upon the best and most reliable information that it can procure. In the execution of such duty the Commission shall be empowered to take testimony, summon and compel the attendance of witnesses and send for persons and papers."

"§ 58-553. No other taxes on express companies; exceptions.—The taxes imposed by this article and authorized to be imposed shall be in lieu of all other taxes and of all licenses, State, county and municipal, upon such companies, except that nothing herein contained shall exempt the companies from the payment of any motor vehicle license or any motor vehicle fuel tax, heretofore or hereafter imposed by law, or the annual registration fee."

through, into or out of Virginia by computing on a mileage basis the proportion which its receipts from express transported by it over six railroads (omitting ten others because *de minimis*) and five airlines operating in Virginia bore to the total receipts from express transported by the appellant over the entire lines of these carriers. The amount so ascertained as gross receipts earned in Virginia was $6,499,519, to which the 2.15% rate fixed by § 58-547 was applied, resulting in the tax of $139,739.66 assessed by the Commission against the appellant, of which it now complains.

The appellant, which will sometimes be referred to herein as the Delaware Company, was incorporated in Delaware in 1928, and does an express business in all of the States of the Union, interstate in all, and intrastate in all except Virginia. Because of the provisions of § 163 of the Virginia Constitution it was denied a certificate to engage in intrastate express business in this State.[2] The Delaware Company has a contract with 68 railroads which own its entire capital stock, and 109 non-stockowning railroads which gives it the exclusive right and privilege to conduct express transportation business over their lines, including those operating in Virginia.

In 1931 the Delaware Company caused to be chartered and organized under the laws of Virginia the Railway Express Agency, Incorporated, of Virginia, for the purpose of conducting a purely intrastate express business in Virginia. The Delaware Company owns all the stock of the Virginia Company and in 1932 entered into a contract with it by which the Virginia Company agreed to conduct the intrastate business in Virginia on the lines of the railroads named by the Delaware Company, and to perform the obligations of the latter company with its contracting carriers concerning intrastate operations in Virginia. The contract provided for joint use by the two companies of real and personal property, equipment and employees.

On the hearing before the Commission it was stipulated that the Delaware Company "conducts an express business in interstate commerce and intrastate commerce in each of the states of the United States with the exception of Virginia, in which it conducts only an interstate business," and that the Virginia Company "conducts solely an intrastate business in the State of Virginia".

Under its assignments of error on this appeal the appellant con-

---

[2] *Railway Express Agency, Inc.* v. *Commonwealth,* 153 Va. 498, 150 S. E. 419, *aff'd,* 282 U. S. 440, 51 S. Ct. 201, 75 L. ed. 450.

tends: (1) that § 170 of the Virginia Constitution does not authorize the imposition of this tax; that § 58-546 does not impose it; that § 58-547 provides no adequate method for determining gross receipts from interstate commerce and does not authorize the method employed by the Commission; (2) that the tax imposed is not a property tax as held by the Commission, but a tax levied upon the privilege of doing an interstate business in Virginia and hence invalid; (3) that the Commission should not have classified appellant's automotive equipment and trucks as rolling stock; and (4) that the Commission erred in rejecting as immaterial some of appellant's offered exhibits.

First. Section 170 of the Virginia Constitution provides that the General Assembly "may impose State franchise taxes," and may "make the same in lieu of taxes upon other property, in whole or in part, of a transportation, industrial, or commercial corporation". Appellant's argument is that this should be construed to mean only domestic transportation corporations and not applied to the appellant which as a foreign corporation has been denied authority to do intrastate express business in Virginia. We do not agree. Section 170 authorizes the imposition of a franchise tax on transportation companies. The appellant is a transportation company, so defined by § 153 of the Constitution. It owns property and does an interstate express business in Virginia. Section 158 of the Constitution says that all property, except as in the Constitution provided, shall be taxed. Certainly no exception of foreign transportation companies is in terms made in § 170 nor do we think that such an exception can be fairly inferred. Limitation on the power of the legislature to impose the tax would have to proceed from a prohibition in the Constitution, not from absence of conferred authority. The powers of the legislature are plenary except as restrained by the Constitution. 4 Mich. Jur., Constitutional Law, § 31, p. 114. We cannot say that our constitutional and statutory provisions were not intended to and do not apply to the appellant, as was said in *State* v. *Plantation Pipe Line Co.*, 265 Ala. 69, 89 So. 2d 549, to be true of the provisions of the Alabama Constitution and laws under former decisions to the effect that a foreign corporation doing an exclusively interstate business in Alabama does not "do any business in this state." [3]

---

[3] *Commonwealth* v. *Appalachian Elec. Power Co.*, 193 Va. 37, 68 S. E. 2d 122, not referred to in argument by either party in the present case, does not control decision here. That case involved the interpretation of § 58-602 of the Code imposing a tax

■ Section 58-546 provides that "Each express company" doing business in this State shall pay a franchise tax in lieu of taxes on other intangible property and in lieu of property taxes on its rolling stock. Appellant is an express company doing business, interstate at least, in this State. Section 58-547 fixes the rate and provides that where operations are partly within and partly without the State, the gross receipts from operations in the State shall be all receipts on business beginning and ending within the State and all receipts from the transportation within this State of express transported through, into, or out of this State. Appellant argues that in order for an express company to be subject to these provisions it must do either an intrastate business, or both an intrastate and interstate business, and since it does only an interstate business the statute does not apply to it. We are not impressed by the argument. Section 58-546 describes the corporations which must pay the tax, and § 58-547 only fixes the rate and provides how the gross receipts to which it applies shall be identified. We detect no purpose in the statute to exempt the appellant because it earns only one kind of the receipts referred to.

■ Section 58-547 does not undertake to prescribe the method of ascertaining the amount of these gross receipts. Sections 58-548 and 58-549 do that. The primary method is for the express company to report what these receipts are. Nobody else could as easily obtain that information. The secondary method is not needed unless the express company fails to furnish the information, which happened here. In that event the Commission is required to make the assessment on the best and most reliable information it can get. It did that by the method above stated. It is a method frequently resorted to in the fields of Federal and State taxation and doubtless necessary in the administration of tax laws. As a method it is ob-

on the money of "every corporation doing in this State" an electric utility business. The question was whether the legislature meant to tax the money of such corporation on deposit in another State and derived solely from and used in connection with operations in such other State. It was held that in view of the legislative history of the statute; the administrative practice, long undisturbed by the legislature, of not taxing such money; and the legislative intent expressed in cognate statutes, particularly the statute limiting the tax on money earned by railroad companies to the part earned in this State, it was not the purpose of § 58-602 to tax money earned and kept in another State. The sentence in that opinion, "Since section 163 of our Constitution forbids a foreign corporation to do a public service business in this State, the statute looks only to Virginia corporations which conduct a utility business in Virginia", is to be taken in its setting and confined to the statute there construed. It does not serve to change the meaning of the clear language and purpose of the Code sections now under review.

viously authorized and seems generally considered legal.

Second. Is the tax imposed by amended sections 58-546 ff. a property tax as held by the Commission and contended by the Commonwealth, or is it only a tax on the privilege of conducting an interstate express business in Virginia as contended by the appellant?

In the cases of *Commonwealth* v. *Baltimore Steam Packet Co.* and *Commonwealth* v. *Norfolk, Baltimore and Carolina Line, Inc.*, 193 Va. 55, 68 S. E. 2d 137, we held that the gross receipts tax imposed on the steamship companies pursuant to what was then § 58-575 of the Code was a property tax. We so held although the statutes there involved denominated the tax a license tax levied for the privilege of doing business in this State, and in addition to the annual registration fee and property tax levied by other statutes. We there reviewed a number of Supreme Court decisions and concluded therefrom that the tax so assessed was not invalid as being a tax upon the privilege of carrying on an exclusively interstate business, but one fairly apportioned to the business carried on within the State, and was in its derivation and substance a tax on an element of value of the physical properties not otherwise taxed. Appeals from that decision were dismissed by the Supreme Court. *Baltimore Steam Packet Co.* v. *Commonwealth*, 343 U. S. 923, 72 S. Ct. 763, 96 L. ed. 1335; *Norfolk, Baltimore and Carolina Line, Inc.* v. *Commonwealth*, 343 U. S. 923, 72 S. Ct. 764, 96 L. ed. 1335.

Afterwards, in *Railway Express Agency, Inc.* v. *Commonwealth*, 347 U. S. 359, 74 S. Ct. 558, 98 L. ed. 757, the Supreme Court in a five to four decision reversed the holding of this court, 194 Va. 757, 75 S. E. 2d 61, that what was then § 58-547 of the Code, which imposed what that statute termed a license tax "for the privilege of doing business in this State, in addition to the annual registration fee and the property tax as herein provided," to be measured by the gross receipts from operations in this State, was a constitutionally valid property tax measured by the gross receipts from business done in Virginia.

The Supreme Court, in the majority opinion, said that the legislature had given a "trinity of characterizations to the tax," naming it "an annual license tax," "in addition to" the property tax levied by what was then the preceding § 58-546, and laid "for the privilege of doing business in this State," and "we can only regard this tax as being in fact and effect just what the Legislature said it was—a privilege tax, and one that cannot be applied to an exclusively interstate business".

The dissenting Justices were of the opinion that the name given the tax by this court "meshes with the state's taxing scheme," and was "perfectly consistent with its earlier expressions on the subject". The majority opinion said the court had sustained and would sustain the power of the State to tax, without discrimination, all property within its jurisdiction, and to include in its assessment "or to assess separately" the value added by the property's assemblage into a going business, "even if that business be solely interstate commerce".

In the present case we are dealing with statutes different from those before the Supreme Court in the former *Railway Express Agency* case. Present § 58-546 imposes only "a franchise tax which shall be in lieu of taxes upon all of its *other* intangible property and in lieu of property taxes on its rolling stock" (emphasis added). Section 58-547 provides that this franchise tax shall be equal to 2.15% of gross receipts derived from operations in this State. Section 58-551 permits the locality to impose a tax on real estate and tangible personal property other than rolling stock on the basis of the assessment thereof made by the Commission for that purpose and at the same rate as imposed by the locality on the same kind of property. Section 58-553 provides that the taxes so imposed and authorized shall be in lieu of all other taxes and of all licenses on such companies, except the motor vehicle license or fuel tax prescribed by law or the annual registration fee.

As we pointed out in the *Steamship* cases, *supra*, our constitutional and statutory provisions furnish a uniform plan for the assessment and taxation of all public service corporations, providing for the imposition by local authorities of *ad valorem* taxes on tangible property on the basis of valuation fixed by the State Corporation Commission, and the imposition of a franchise tax measured by gross receipts for the support of the State government; and that in making the assessments of the tangible property for local taxation, the Commission must *exclude* such franchise value as may be inherent therein, with the result that only the "bare bones" value of such property is taxed by the localities, leaving the intangible or "going concern" value to be taxed by the State for the protection and services rendered by it. The statutes now under consideration fit into and "mesh" with that scheme, and make plain, we think, the legislative intent, in keeping with the constitutional intent from which the legislation proceeded, that the franchise tax now imposed is in fact and effect a tax on intangible property of the company, of great

value, which except for this franchise tax would be immune from the payment of any tax.

As stated by the Commission in its opinion, it has been the policy of Virginia since the adoption of its present Constitution in 1902 to impose franchise taxes measured by gross receipts instead of income taxes on public utilities. The Constitution itself (§ 177) imposed the tax on railroads and the tax on other companies was left to the legislature. When the proposed system was submitted to the Convention which formulated the Constitution, its Committee on Taxation and Finance reported in part:

"* * * The system which we hope to see adopted in this State would be a system of franchise taxes by which all the property and capital of a corporation would be gotten at; * *. * * * If that be done, if you get at all of the property, its personal property and its real estate, its tangible, invisible property, like franchises, then you have gotten at every dollar of value that the corporation owns. When you have arrived at that, you ought not to put another tax on the same property. We are suggesting a system of taxation by which the entire property of a corporation would be gotten at and that being arrived at, we say it would not be fair to tax the stock of the companies in the hands of the individual owner. * * " Debates, Constitutional Convention, 1901-2, Vol. II, p. 2857.

Consonant with the Committee's purpose, § 170 of the Constitution adopted by the Convention provides that the General Assembly "may impose State franchise taxes, and in imposing a franchise tax may, in its discretion, make the same in lieu of taxes upon *other* property". (Emphasis added.)

The fact that a franchise tax based on the gross receipts of a corporation is a tax on its intangible property was not created by the framers of the Virginia Constitution. More than six years before that Constitution was adopted the Supreme Court of the United States had held to that effect in the case of *Adams Express Co.* v. *Ohio,* 165 U. S. 194, 17 S. Ct. 305, 41 L. ed. 683, and (on petition to rehear) 166 U. S. 185, 17 S. Ct. 604, 41 L. ed 965. The Ohio statute required express companies to file a return and to include therein "a statement of their entire gross receipts, from whatever source derived," and in taxing the value of the property in the State the assessing board was directed to be guided "by the value of the entire capital stock of said companies, and such other evidence and rules" as would lead to the true

value of their property within the State, in proportion to the entire property of the companies, as determined by the value of the capital stock thereof and the other evidence and rules. The assessing board fixed the value of the property of Adams Express Company to be taxed in Ohio at $533,095.80. That company had reported the value of its real estate in Ohio at $25,170 and its personal property, including moneys and credits, at $42,065; its gross receipts from all sources within the State at $282,181 and its 120,000 shares at $140 to $150 a share. The company contended that the market price of its shares afforded no reasonable basis for estimating the value of its property and that the scheme of taxation was illegal, was a tax on interstate commerce and a denial of Due Process and Equal Protection.

The court held that the value of the property of the company was not limited to its tangible items, but included its "unit of use and management," and that its horses, wagons, and furniture, its contracts for transportation facilities and the capital necessary to carry on the business, whether represented in tangible or intangible property in Ohio, "possessed a value in combination and from use in connection with the property and capital elsewhere, which could as rightfully be recognized in the assessment for taxation in the instance of these companies as the others," referring to railroad, telegraph and sleeping car companies. The court said:

"* * * The taxation is essentially a property tax, and, as such, not an interference with interstate commerce."

In the opinion denying a rehearing, 166 U. S. 185, 218-19, 17 S. Ct. 604, 605, 41 L. ed. 965, 977, the court said in reply to the contention of the express companies that they had in the State only certain tangible personal property which must be valued as other like property and upon such value alone the assessment must be made:

"But this contention practically ignores the existence of intangible property, or at least denies its liability for taxation. * * Now whenever separate articles of tangible property are joined together, not simply by a unity of ownership, but in a unity of use, there is not infrequently developed a property, intangible though it may be, which in value exceeds the aggregate of the value of the separate pieces of tangible property. Upon what theory of substantial right can it be adjudged that the value of this intangible property must be excluded from the tax lists, and the only property placed thereon the separate pieces of tangible property?"

Again it was said: "If a statute, properly construed, contemplates

only the taxation of horses and wagons, then those belonging to an express company can be taxed at no higher value than those belonging to a farmer. But if the state comprehends all property in its scheme of taxation, then the goodwill of an organized and established industry must be recognized as a thing of value." 166 U. S. at 221, 17 S. Ct. at 606, 41 L. ed. at 978.

"* * * Do not these intangible properties—these franchises to do—exercised in connection with the tangible property which it holds, create a substantive matter of taxation to be asserted by every state in which that tangible property is found?" 166 U. S. at 225, 17 S. Ct. at 608, 41 L. ed. at 979.

*Great Northern Ry. Co.* v. *Minnesota,* 278 U. S. 503, 49 S. Ct. 191, 73 L. ed. 477, involved a Minnesota statute which imposed a tax, measured by gross receipts, upon all railroad companies, "in lieu of all taxes upon all of their property within the state". Of it the court said: "The tax thus levied is a property tax based on the gross earnings fairly attributable to the property of the railway company within the state." See also *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217, 12 S. Ct. 121, 35 L. ed. 994; *United States Exp. Co.* v. *Minnesota,* 223 U. S. 335, 32 S. Ct. 211, 56 L. ed. 459; *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250, 58 S. Ct. 546, 82 L. ed. 823, 115 A. L. R. 944; *Canton R. Co.* v. *Rogan,* 340 U. S. 511, 71 S. Ct. 447, 95 L. ed. 488.

[■] The appellant contends that if the franchise tax be considered a property tax the amount of it is out of proportion to its property in Virginia and reflects the value of property outside of Virginia, and it complains that the Commission made no dollars and cents valuation of the intangible or going concern value of the company's property. The appellant says that it reported the value of its real and tangible personal property in Virginia for 1956 at $458,565.16, and instead of determining the going concern value of that property, the Commission assessed a franchise tax on its gross receipts calculated to have been derived from business in this State.

It is to be remembered, however, that the appellant owns under its contract the exclusive express privileges on 177 railroads of the country, as well as on truck lines, airlines and steamboat lines. From these contract privileges it earned in 1955, according to its Annual Report to the Commission, in gross operating revenues the sum of $387,854,479, and paid to the carriers the net sum of $146,522,248. Part of this operating revenues was earned in Virginia. These

earnings added a large intangible value to the tangible value of the separate items of tangible properties in Virginia which were valued by the appellant at $458,565.16. Based on the proportion of Virginia mileage to system mileage, as ascertained by the Commission, these express privileges on six railroads and five airlines in Virginia earned $6,499,519 in 1955. Said the Supreme Court in *Adams Express Co.* v. *Ohio, supra*:

"The first question to be considered therefore is whether there is belonging to these express companies intangible property—property differing from the tangible property—a property created by either the combined use or the manner of use of the separate articles of tangible property, or the grant or acquisition of franchises or privileges, or all together. To say that there can be no such intangible property, that it is something of no value, is to insult the common intelligence of every man." 166 U. S. at 219-20, 17 S. Ct. at 605-6, 41 L. ed. at 977.

The going concern value of a business, as said by the Commission in its opinion, "depends on the value of the business as a going concern and not on the value of the land, machinery, equipment and tools used in the business." And it added:

"In the case before us the Delaware Company would have the same business it has now even if it did not own a penny's worth of tangible property in Virginia. The Delaware Company owns all the stock of the Virginia Company. The two companies do all their business in the same places in the same vehicles with the same employees. If the parent company should transfer title to all the property used in the business to the local company, it would own no tangible property in Virginia but the going concern value of the business would not be affected in any way. The Railway Express Agency is the only big business in America that has an absolute nationwide monopoly. Counsel says that this vast monopoly has no going concern value because all its earnings go to the railroads who own it. Railway Express Agency was incorporated by the railroads and owns the monopoly as a separate entity, and it is taxable as separate entity like any other corporation. Such a monopoly built up over the years by the expenditure of millions of dollars is not the sort of property that is bought and sold in the market place, but it is nevertheless a thing of great value. It is a unique kind of property, but the fact that it is unique is not a reason for holding it to be exempt from taxation. The fact that the value of that unique prop-

erty cannot be appraised in dollars and cents like a piece of real estate is a reason for measuring the tax by gross receipts."

The legislature, in the statutes set out above, provided that the tax should be equal to 2.15% of the gross receipts from operations in this State and in lieu of all other taxes on intangible property and in lieu of property tax on rolling stock. For years prior to 1954 the appellant reported to the Commission the amount of its gross receipts or agreed to the amount fixed by the Commission. For 1956 it reported, as stated, that it had no way of determining its gross receipts from interstate business in Virginia and that it kept no books from which it could ascertain such gross receipts and the cost of doing so would have been prohibitive, but without any supporting evidence to explain how much and why. The Commission thereupon ascertained in the best way it could the amount of these gross receipts to be $6,499,519. If that was too much and if there was included in the calculation, as appellant contends, the value of property outside of Virginia, it was the duty of the appellant to present evidence to show what reduction should be made, or to have explored the possibility of an agreement about it as in prior years (*Railway Express Agency, Inc.* v. *Commonwealth*, 194 Va. 757, 75 S. E. 2d 61).

There is no evidence in the record as to the relation between the Company's property and its revenues in other States. Code § 58-672 and § 58-1122 provide ample means for correcting excessive assessments. Clearly the burden was on the appellant to produce evidence to show in what way and to what extent the assessment made by the Commission was too much. It did not do so but centered its attack on the constitutionality of the taxing statute. We take the finding of value by the Commission as *prima facie* correct, Constitution § 156 (f). It is not incredible that a property which produced gross earnings of $6,000,000 in one year would have a value of that much.

In *Adams Express Co.* v. *Ohio, supra,* the court said it was suggested that the company might have "bonds, stocks, or other investments which produce a part of the value of its capital stock, and which have a special situs in other states or are exempt from taxation. If it has, let it show the fact. * * It is called upon to make return of its property, and if its return admits that it is possessed of property of a certain value, and does not disclose anything to show that any portion thereof is not subject to taxation, it cannot complain if the state treats its property as all taxable." 166 U. S. at 222-3, 17 S. Ct. at 607, 41 L. ed. at 978.

■ Third. Appellant contends that the Commission, contrary to its former practice, classified its automotive equipment and trucks as rolling stock rather than as tangible personal property, thereby making the franchise tax displace a property tax on a larger value of the company's properties. As stated, § 58-546 provides that the franchise tax is "in lieu of property taxes on its rolling stock" as well as in lieu of taxes on all intangibles. The appellant argues that its automotive equipment and trucks should still be treated by the Commission as tangible personal property as in former years, to be taxed by the localities. Section 171 of the Constitution provides that tangible personal property "except the rolling stock of public service corporations" shall be subject to local taxation only. The result of the Commission's action is to relieve appellant's automotive equipment and trucks of local taxation and also of State taxation except as their value is reflected in the franchise tax. This value is stated to be $262,719.63.

The Commonwealth says that this question is collateral to the issue here because this is a statutory proceeding to correct an erroneous assessment, not a proceeding to compel an assessment to be made. This is true, but considering the point on its merits we think the Commission was warranted if not required by the amended statutes to classify the automotive equipment and trucks as rolling stock. Under the Constitution, § 171, *supra*, the legislature has the right to impose a State tax on rolling stock. *East Coast Freight Lines* v. *Richmond*, 194 Va. 517, 74 S. E. 2d 283. It seems logical to classify the automotive equipment and trucks used by the appellant in transporting express as rolling stock. The legislature so classified similar property in Article 11, Chapter 12, Title 58 of the Code, which requires the Commission to assess the rolling stock of motor vehicle carriers, "which shall include all busses, trucks, tractor trucks, trailers and semi-trailers and all other equipment which it is reasonably proper to class as rolling stock * * *." Having the right to tax rolling stock, the legislature clearly directed in § 58-546 that this type of tangible property should be relieved of any other taxation than that imposed by the franchise tax to be paid by the company.

■ Fourth. Appellant's remaining contention is that the Commission erred in rejecting as immaterial its Exhibits 1 and 5 and so much of 3, 4 and 6 as did not relate to the year 1956.

Exhibit No. 1 was appellant's agreement with the railroads, offered to show that appellant's gross receipts were paid to the railroads

after paying operating expenses and maintenance charges. Its annual report filed in the evidence showed that. No. 6 was a statement of the assessments and taxes of the Virginia Company, not the appellant, on its tangible and intangible property involved in its intrastate business from 1933 through 1956. No. 3 showed the gross receipts of the appellant from 1931 through 1956, except for 1954 and 1955, as determined by the Commission, together with other intangibles and tangible property and the tax imposed thereon for those years; No. 4, its tangible property, including automotive equipment and trucks, and the local taxes paid thereon for the years 1931-1956; No. 5, the number, cost and market value of its automotive equipment in the cities of the State for 1956. Appellant says these last three were material to its contention, dealt with in "Third" above, that its automotive equipment and trucks should have been assessed in 1956 as tangible property and not as rolling stock.

We agree with the Commission that these offered exhibits were immaterial on the issue to which they were claimed to relate, *i.e.*, whether the franchise tax for 1956 imposed by amended § 58-546 was unconstitutional. While the exhibits might well have been received as information, and are in the record before us and have been referred to in argument so far as considered useful, yet any materiality to the questions raised is remote if at all existent, and it was not reversible error to refuse them.

For the reasons stated we hold that the franchise tax in question is a property tax, not prohibited by the Commerce Clause or other clauses of the Constitution of the United States, and validly imposed by the amended sections of the Code referred to. The order of the State Corporation Commission appealed from is accordingly

*Affirmed.*