# RAILWAY EXPRESS AGENCY, INC. *v.* VIRGINIA.

No. 163.   Argued January 5, 1954.—Decided April 5, 1954.

*Thomas B. Gay* argued the cause for appellant. With him on the brief were *J. H. Mooers, W. H. Waldrop, Jr.* and *H. Merrill Pasco.*

*Frederick T. Gray,* Assistant Attorney General of Virginia, argued the cause for appellee. With him on the brief was *J. Lindsay Almond, Jr.,* Attorney General.

Opinion of the Court by MR. JUSTICE JACKSON, announced by MR. JUSTICE REED.

This appeal from the Supreme Court of Appeals of Virginia presents another variation in the seemingly endless problems raised by efforts of the several states to tax commerce as it moves among them.

In the 1920's the railroads of the country took over the express business theretofore separately handled. Their instrumentality was this appellant, a Delaware corporation, chartered for interstate and intrastate operation throughout the Union and actually so operating in every state except Virginia. It sought to do a general express business there, but that State has a constitutional provision which forbids a foreign corporation to exercise any public-service powers or functions therein.[1] This prohibition was invoked by the State Corporation Commission[2] to deny appellant authority to do any intrastate business. This exclusion was sustained by Virginia's highest court[3] and by this Court.[4]

---

[1] Va. Const., Art. XII, § 163.

[2] Case No. 3900, Virginia Corporation Commission Report (1929), p. 252.

[3] *Railway Express Agency, Inc.* v. *Commonwealth ex rel. State Corporation Comm'n,* 153 Va. 498, 150 S. E. 419.

[4] 282 U. S. 440.

As a consequence of the State's own policy, this appellant does no business in Virginia which the State has power to prohibit but does only such as it can conduct under protection of the Commerce Clause of the Federal Constitution. To handle such intrastate express as falls within the power of the State to control, a separate Virginia subsidiary necessarily was organized. That local company annually has been assessed and has paid the type of tax here in controversy, based upon its total gross receipts. Those payments are not before us.

Virginia provides by statute [5] a separate and detailed system of taxation for express companies. It allocates

---

[5] The tax in question is laid under Va. Code, 1950, § 58–547. This section and the section immediately preceding it read as follows:

"§ 58–546. Taxes on property of express companies.—Each and every one of the express companies doing business in this State shall, on or before the first day of October of each and every year, pay to the State and to the several counties, cities and towns of the State wherein they may have taxable properties located, the taxes levied on such property as follows:

"(1) The State tax on the intangible personal property (other than shares of stock, and bonds issued by counties, cities and towns or other political subdivisions of this State) owned by every such company shall be at the rate of fifty cents on every one hundred dollars of the assessed value thereof;

"(2) The State tax on the money of every such company shall be twenty cents on every one hundred dollars of the assessed value thereof;

"(3) There shall be no local levies assessed on such intangible personal property or money;

"(4) On the real estate and tangible personal property of every such company there shall be local levies at the same rate or rates as are assessed upon other real estate and tangible personal property located in such localities, the proceeds of which local levies shall be applied as is provided by law.

"The provisions of this section shall apply to the assessment for the tax year nineteen hundred forty-nine and annually thereafter, unless otherwise provided by law.

"§ 58–547. Annual license tax.—Every such company, for the privilege of doing business in this State, in addition to the annual regis-

to state taxation, free of all local levies, two kinds of property, *viz.*, intangible personal property and money. It sets off real estate and tangible personal property for local levies at the same rates as other similar properties. These, taxable at different rates, are all included in the statute under the rubric "Taxes on property of express companies." Then follows a section headed "Annual license tax" providing that "for the privilege of doing business in this State" express companies shall pay "in addition to . . . the property tax as herein provided" an "annual license tax" upon gross receipts earned in the State "on business passing through, into or out of this State."

Appellant has protested the gross-receipts tax, and for some years the protesting company and the state authorities appear to have come together on a compromise formula, as to the portion of receipts attributable to Virginia, the details of which need not concern us, since it does not affect the issue of power now adequately raised, passed upon by the State Corporation Commission and the Supreme Court of Appeals and duly brought before us.

tration fee and the property tax as herein provided, shall pay an annual license tax as follows:

"The tax shall be equal to two and three-twentieths per centum upon the gross receipts from operations of such companies and each of them within this State. When such companies are operating partly within and partly without this State, the gross receipts within this State shall be deemed to be all receipts on business beginning and ending within this State and all receipts earned in this State on business passing through, into or out of this State; provided, unless otherwise clearly shown, such last-mentioned receipts shall be deemed to be that portion of the total receipts from such business which the entire mileage over which such business is done bears to the mileage operated within this State.

"The provisions of this section shall apply to the assessment for the tax year nineteen hundred forty-nine and annually thereafter, unless otherwise provided by law."

Since admittedly the State did not grant any privilege but on the contrary denied every privilege in its power to withhold, and since it concedes that appellant does nothing within the State except interstate commerce, appellant contends that the assessment is invalid for contravention of the Commerce Clause of the Federal Constitution.

The State counters with the contention that we should regard this, not as a privilege tax, even though it was labeled as such by the statute imposing it, but, instead, as a property tax measured by gross income and laid on the intangible value of good-will or going-concern status. The Corporation Commission said that the physical properties were assessed at dead value or bare-bones value for local taxation, while here the "live, or going concern value" is being separately taxed by the State "for the protection and services rendered by it." [6]   The State's highest court approved. While great respect is due these conclusions, it has long been held that in a case involving the line between permissible state taxation of property at its full value, including going-concern value, and prohibited taxation of gross receipts from interstate commerce, "neither the state courts nor the legislatures, by giving the tax a particular name or by the use of some form of words, can take away our duty to consider its nature and effect," *Galveston, H. & S. A. R. Co.* v. *Texas,* 210 U. S. 217, 227, in which inquiry "we are concerned only with its practical operation." *Lawrence* v. *State Tax Comm'n,* 286 U. S. 276, 280. See *Wisconsin* v. *J. C. Penney Co.,* 311 U. S. 435, 443–444.

We start with the taxing statute, in which the Legislature gave a trinity of characterizations to the tax. It

---

[6] Cases Nos. 10,629 and 10,767, Virginia Corporation Commission Report (1952). The Commission was quoting from the opinion of the Supreme Court of Appeals in *Commonwealth* v. *Baltimore Steam Packet Co.,* 193 Va. 55, 70, 68 S. E. 2d 137, 147.

was declared to be in addition to the "property tax," not an additional property tax; it was named "an annual license tax," and it was laid "for the privilege of doing business in this State." It is not an easy conclusion that the Legislature did not know the actual character of the tax it was laying or that it misconceived what it was taxing. If the tax was in purpose and effect one on property, tangible or intangible, no reason is apparent for casting it in the mold of a privilege tax. Indeed, as the Corporation Commission finally said, the opposite is true, and some other basis for the tax must be found if it is to be saved as valid. This both the Commission and the court below sought to do.

The Virginia court, in this and earlier cases, considered that gross earnings measure the value of a good-will or going-concern element which is a separate intangible property of the company.

Of course, we have held, and it is but common sense to hold, that a physical asset may fluctuate in value according to the income it can be made to produce. A live horse is worth more than a dead one, though the physical object may be the same, and a smooth-going automobile is worth more than an unassembled collection of all its parts. The physical facilities used in carrying on a prosperous business are worth more than the same assets in bankruptcy liquidation or on sale by the sheriff. No one denies the right of the State, when assessing tangible property, to use any fair formula which will give effect to the intangible factors which influence real values. *Adams Express Co.* v. *Ohio State Auditor,* 166 U. S. 185. But Virginia has not done this.

Instead, the practical effect of the tax conforms to its statutory description as one whose impact is squarely upon gross receipts without consideration of their effect on the value of any of the classes of property recognized else-

where in the statute. A summary of appellant's total taxation for 1951 will illustrate this point.[7] It reported money on deposit in Virginia of $109,906.38, on which it paid a tax of $219.81 at the rate of twenty cents per $100. We may drop this item from consideration of additional going-concern value, for money is money and is a medium of exchange which does not deflate or inflate according to the owner's use of it. A dollar to an express company is worth as much as and no more than a dollar to one of its employees. But this company had real property and tangible personal property, items no doubt possessing a going-concern as well as an intrinsic value. These properties were assessed at $129,279, on which it paid taxes of $3,389.65 at local rates, probably varied but averaging 2.6 per centum.

---

[7] The figures discussed in the text are summarized in the following chart for the year 1951.

| Types of Property Taxed | Statutory Tax Rate | Assessed Value of Appellant's Property | Taxes Paid by Appellant |
|---|---|---|---|
| 1. Intangible personal property | 50¢ on every $100 | Unknown ($13,290,942.00 if disputed tax is intangible property tax) | Unknown ($66,454.71 if disputed tax is intangible property tax) |
| 2. Money | 20¢ on every $100 | $109,906.38 | $219.81 |
| 3. Real estate and tangible personal property | Local levies (average of 2.6 per centum) | $129,279.00 | $3,389.65 |
| 4. Gross receipts | 2³⁄₂₀ per centum | $3,090,916.55 | $66,454.71 |

Appellant's tax, under the questioned portion of the statute, amounted to $66,454.71, so that its *tax* on a gross-receipts basis was over fifty percent of the *total value* of its real and tangible personal property. It is this tax which Virginia says is really a tax on the intangible value of this tangible property.

Neither the state court nor the Commission has seen fit to state any amount which it considers to be the going-concern valuation. We know the amount of the tax, and we know the rates of taxation, and from that can compute a possible valuation base. If this going-concern value be treated as separable "intangible property," the statutory rate is fifty cents per $100, at which rate tangible property worth only $129,279 must be deemed to have an intangible going-concern value of $13,290,942. In other words, every dollar invested in the tangible property of an express business is deemed worth over $100 for tax purposes. This may not overtax the express company, but it does overtax our credulity, and neither the court nor the Commission, while treating this as an intangible, expressly treated it as entitled to the intangible property rate or classification.

But the $66,454.71 of tax and the statutory gross-earnings tax rate of 2 3/20 per centum produce a base of $3,090,916.55, which is exactly the amount of gross revenues reported by appellant. To ascribe a going-concern value of over three million dollars to tangible property of $129,279 is on its face an extreme attribution. To base the value on appellant's gross revenues is to assume that every dollar of annual intake adds a dollar of intangible value to the company's assets regardless of how much it cost in labor, interest and other expense, including other taxes, to produce it. On the other hand, as a forthright tax on gross receipts, the tax involves no irrational or impractical assumption.

We have sustained and would now sustain the power of a state to tax, without discrimination, all property within its jurisdiction and to include in its assessment, or to assess separately, the value added by the property's assemblage into a going business, even if that business be solely interstate commerce. Cf. *Meyer* v. *Wells, Fargo & Co.,* 223 U. S. 298; *Baker* v. *Druesedow,* 263 U. S. 137; *Adams Express Co.* v. *Ohio State Auditor,* 166 U. S. 185. The impact of the tax is thus upon the proportionate total worth of the property. But the tax in dispute here does not depend on owning any physical property, nor upon the value thereof, but would be levied on gross revenues even if the company found some way to dispense with all local, physical property. The fact that its measure is gross revenue is consistent with a tax on the privilege of doing a volume of business which would yield that revenue, just as the Legislature indicated. But we have declined to regard mere gross receipts as a sound measure of going-concern value in a practical world of commerce, where values depend on profitableness of a business, not merely its volume. Cf. *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, 328–329.

Here the State excises every receipt from movement of express in interstate commerce. It takes a portion of gross revenue from "all receipts earned in this State on business passing through, into or out of this State." It contends that this obvious burden on interstate commerce is validated by state protection of a localized incident in the course of the business. The three incidents are originating the interstate movement, which requires local pickup of the parcels; terminating the movement, which requires delivery, and movement through the State. If each of these incidents is sufficient warrant for taxing gross revenues from wholly interstate commerce, a concern doing a nationwide business is vulnerable to a gross-revenue tax in every one of the forty-eight states. But

it is argued that this is permissible, provided the states formulate their burden so as each to burden it proportionately, not encroaching on the other's right to burden. It is enough to say that we recently have ruled that local incidents such as gathering up or putting down interstate commodities as an integral part of their interstate movement are not adequate grounds for a state license, privilege or occupation tax. *Spector Motor Service, Inc.* v. *O'Connor,* 340 U. S. 602; *Memphis Steam Laundry Cleaner, Inc.* v. *Stone,* 342 U. S. 389; *Michigan-Wisconsin Pipe Line Co.* v. *Calvert,* 347 U. S. 157; *New Jersey Bell Telephone Co.* v. *State Board,* 280 U. S. 338.

The Supreme Court of Appeals placed reliance upon our dismissal of the appeals in *Baltimore Steam Packet Co.* v. *Virginia,* 343 U. S. 923, and *Norfolk, Baltimore & Carolina Line* v. *Virginia,* 343 U. S. 923, and may well have been misled, since we assigned no reasons and cited no authority. In those cases, the Virginia court held an almost identical tax to be a property tax. *Commonwealth* v. *Baltimore Steam Packet Co.,* 193 Va. 55, 68 S. E. 2d 137.[8] But a vital distinction, so far as our jurisdiction is concerned, will account for dismissal of the appeals. One of those appellants was a Virginia corporation and derived its privilege to exist from that State. Both were engaged in intrastate as well as interstate commerce and were therefore subject to some privilege tax from the State. For our purposes, it mattered not whether the

---

[8] The Corporation Commission commented on the *Baltimore Steam Packet* case in this manner: "So, when the Virginia Supreme Court of Appeals held that the license taxes on steamship and express companies were property taxes, all danger of an adverse decision in the Supreme Court of the United States was averted, and that court dismissed the appeal without comment, presumably on the ground that no federal question worth discussing was involved." Cases Nos. 10,629 and 10,767, Virginia Corporation Commission Report (1952).

right to tax was based on those companies' privileges or on their property, since they were taxable on either basis. This fact distinguishes those dismissed cases from the one at bar and from *Spector Motor Service, Inc.* v. *O'Connor, supra.* Those appeals did not question the fairness of apportionment of revenues between the interstate and intrastate business so as to require such consideration as we gave in *Central Greyhound Lines* v. *Mealey,* 334 U. S. 653. It was therefore a mistake to assume that this Court, by dismissal of the appeals, approved the holding of the Virginia court that this statute imposes what in reality is a property tax though otherwise named and shaped.

We think we can only regard this tax as being in fact and effect just what the Legislature said it was—a privilege tax, and one that cannot be applied to an exclusively interstate business.

The judgment is reversed and the cause remanded for any further proceeding not inconsistent herewith.

*Reversed and remanded.*

MR. JUSTICE CLARK, whom THE CHIEF JUSTICE, MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS join, dissenting.

The tax in question is nondiscriminatory, fairly apportioned, and not excessive. That much is conceded by appellant. Whatever the Court's mathematics may prove, it does not establish that the tax is unfair in any respect. In *Spector Motor Service, Inc.* v. *O'Connor,* 340 U. S. 602, 610–615 (1951), I reasoned that a state tax with such attributes may properly be levied against a corporation which obviously could not engage in interstate commerce in the state without using the facilities and services of the state. I would uphold the tax here on the same grounds. But even accepting the Court's approach in *Spector,* the instant tax is valid.

*Spector* held that a state tax imposed on a foreign corporation engaged solely in interstate commerce for "the privilege of carrying on or doing business in the state" violates the Commerce Clause of the United States Constitution. The "operating incidence" of the tax— "the privilege of carrying on or doing business in the state"—was determined by the state court and not questioned by this Court. That label formed the nub of the Court's rationale in striking down the tax. That decision did not purport to cover a tax bearing a different name. In fact, the Court there specifically noted that the tax was *not* "collected in lieu of an ad valorem property tax"; presumably had such been the case the tax would have been upheld. *Id.,* at 607.

The Supreme Court of Appeals of Virginia has held that the instant tax is an ad valorem tax on intangible property; the "operating incidence" of the tax has been labeled the "going concern" value of appellant's physical assets in Virginia. The state court specifically held that the tax "is not a tax upon the privilege of carrying on a business exclusively interstate in character. . . ." 194 Va. 757, 760–761, 75 S. E. 2d 61, 63. Hence, if we accept the determination of the state court, there is little question but that the tax is valid even under *Spector*.

This Court, however, refuses to accept the Virginia court's determination and assigns to the Virginia tax the same "privilege" label that condemned the tax in *Spector*. Although the Court refused to pierce the label in *Spector,* I do not dispute its right to re-examine a label affixed by a state court. In some cases the label may be wholly inconsistent with the state's taxing scheme; or it may be true— though I doubt it—that a state court might deliberately misbrand a tax to avoid decisions of this Court. But neither fact justifies the Court's refusal to accept the determination of the state court in this case. The name given the tax by the Virginia court meshes with the state's

taxing scheme. And I do not believe that the Virginia court deliberately mislabeled the tax. Indeed, the holding of the state court is perfectly consistent with its earlier expressions on the subject and those of the State Corporation Commission, some antedating *Spector*. *Commonwealth* v. *Baltimore Steam Packet Co.,* 193 Va. 55, 68 S. E. 2d 137 (1951), appeal dismissed, 343 U. S. 923 (1952); *City of Richmond* v. *Commonwealth,* 188 Va. 600, 50 S. E. 2d 654 (1948). Moreover, this Court does not question the existence of a going-concern value aside from the value of a business unit's physical assets. Nor does appellant; in its brief appellant "freely admits that a going business, if operated at a profit or if there is a reasonable expectation of earning a profit on future operations, may have a going concern or what is sometimes called an 'organization' value." Since appellant does not contend that it is not operating at a profit or that it has no reasonable expectation of earning a profit in the future, even it would be forced to admit, as must the majority of this Court, that a substantial element of property values is being immunized from the reach of Virginia's current taxes which are neither excessive nor unfair.

From 1942 until *Spector,* appellant had recognized the validity of the tax and paid it. As a result of the immunity given by today's decision, appellant and others similarly situated receive a windfall in the form of a valid claim for tax refunds extending back as far as limitations will permit. This is the result of today's twist to the *Spector* doctrine. If the label makes the tax invalid, the label is accepted; if the label validates the tax, the Court will pierce the label. This approach is rather hard on the states and creates additional obstacles for them in their continuing effort to make purely interstate business units pay a fair share of the cost of state facilities and services essential to the functioning of these enterprises.

In sum, Virginia's tax should not be held unconstitutional merely because of the name the state's legislature gave it. Since no one asserts that the amount of the tax is unfair or discriminatory, presumably the same tax assessed under a different name by the use of different words would be upheld. The constitutionality of a state's tax laws should not depend on the ability of state legislatures to foresee what tax language would most likely meet this Court's approval.