## TRAILER TRAIN COMPANY *v.* DEPARTMENT OF REVENUE

Levi J. Smith and Dennis F. Todd, Smith, Todd & Ball, Portland, represented plaintiff.

Walter J. Apley, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered January 17, 1973.

CARLISLE B. ROBERTS, Judge.

This is an appeal from defendant's Order No. PTU-71-43. Plaintiff is a Chicago-based, Delaware corporation which owned a fleet of 54,345 flatcars in 1970

which it leased for use in interstate commerce. The plaintiff was subject to property tax in Oregon on the assessed value of that part of its fleet which was deemed to have a situs in Oregon as of January 1, 1971, determined by defendant from data relating to 1970, pursuant to ORS 308.505 to 308.730 (applicable to "centrally assessed corporations").

ORS 308.550 makes provision for the allocation of the value of the property of a taxpayer which operates both within and without the state. The statute provides that where the entire property of the taxpayer, both within and without the state, is valued as a unit, the defendant may value the entire property and ascertain the property subject to taxation in Oregon

"(1) * * * by the proportion which the number of miles of rail, wire, pipe or pole lines or operational routes in Oregon, controlled or used by the company, as owner, lessee, or otherwise, bears to the entire mileage of rail, wire, pipe or pole lines or operational routes controlled or used by the company, as owner, lessee, or otherwise."

In the present case, this formula is not applicable because of the transitory nature of the property, consisting wholly of flatcars. Subsection (2) of the statute, general in its terms, is pertinent:

"If the value of any property having a situs in this state, of a company operating both within and without the state, cannot fairly be determined in the manner prescribed in subsection (1) of this section, the department may use any other reasonable method to determine the proper proportion of the entire property assessable for taxation in this state."

Plaintiff has emphasized that it is not quarreling with defendant's method of valuation of the flatcar

fleet, but contends that the method used by defendant in allocating a portion of that fleet to Oregon was illegal. (At trial, plaintiff withdrew from consideration an issue relating to useful life of the property.)

Plaintiff argues that the assessed valuation of $3,694,000 determined by the defendant should be reduced to $3,320,000 or $3,125,400 or $3,372,800, depending upon the formula used.

The "reasonable method" of allocation used by the defendant pursuant to ORS 308.550 (2), with respect to private car companies, including the plaintiff, is (1) to ascertain the *quantity* of cars assignable to the state in order to develop a property allocation factor (which was given a weight of .75 in the formula); and (2) when possible, to develop an *economic* factor which will reflect the "going concern" increment in the property (which is given a .25 weighting). See Plaintiff's Exhibit 10, Western States Association of Tax Administrators 1960, *Report of Committee on Allocation of Public Utilities,* [hereinafter cited as WSATA 1960] at 38-40.

The plaintiff points out that the "cost" factor in the defendant's allocation formula is intended to measure the quantity of property assessable by Oregon by finding the proportional relation of the cost of the fleet allocable to Oregon to the cost of the national fleet and that the second factor, a "revenue" factor, is intended to show the proper relation of the plaintiff's gross receipts allocable to Oregon to the national gross receipts. The second part of the formula is intended to add to the bare property the enhanced "going concern" value which is attributable to the property

because of its assemblage and usefulness in an operating company, as contemplated by ORS 308.510.

The plaintiff accepts the defendant's application of the quantity factor. The plaintiff had reported the number of cars in its allocable fleet as 54,345. The defendant, using acceptable methods (see Plaintiff's Exhibit 10, WSATA 1960, *supra*), made situs counts of Oregon "cars standing" and "cars running," and found the total to be 268.09. The average value per fleet car, using reproduction costs new, less depreciation, was found to be $13,300, so that the first part of the formula could be expressed as ".75 ($4,289,400 divided by $923,680,100) plus .25 * * *."

The defendant constructed the second part of its formula by ascertaining the "system wheelage" (plaintiff's car-miles both within and without the state) and the Oregon wheelage and found the factor of Oregon's percentage of the system wheelage to be .0081. It found the operating revenue of the system to be $124,119,246, which, multiplied by the factor, "prorated" to Oregon operating revenue of $1,005,366 to make the second part of the formula read "* * * plus .25 ($1,005,366 divided by $124,119,246) equals 0.0055."

The plaintiff appears to accept, as it must, that the "state's fair share" of its "going concern" value is taxable by Oregon because it reflects the real value of the property found in Oregon. *Railway Express Agency, Inc. v. Virginia,* 347 US 359, 74 S Ct 558, 98 L Ed 757 (1954); *Pullman Co. v. Richardson,* 261 US 330, 43 S Ct 366, 67 L Ed 682 (1923). However, plaintiff appears to reverse its position when it contends that the second part of the Oregon formula does not properly measure a "gross receipts factor" because it is in fact based upon the wheelage in Oregon

compared to national wheelage. Plaintiff argues that the formula used by defendant is more properly described as:

$$\frac{3}{4} \frac{(\text{cars in Oregon})}{(\text{cars in fleet})} \quad x \quad \frac{1}{4} \frac{(\text{Oregon wheelage})}{(\text{national wheelage})}$$

Plaintiff concludes that while full weight has been given to the cost factor, based upon actual situs count, showing that Oregon could have taxed about 268 cars as being present, on the average, in the state during 1970, the actual result of the state's formula is to allocate the equivalent of over 320 cars to Oregon, thus attributing property to Oregon which had no taxable situs in this state. Plaintiff calls attention to its Exhibit 10, the Report prepared by the WSATA 1960, *supra,* (an association in which the defendant is a member and in which the defendant's officers took a leading part in preparation of the report). Several positive statements enunciated in the report are alleged by plaintiff to be contrary to defendant's action. Economic factors are compared to property factors, at 39-40:

"Car-miles is available for both system and state but it is considered a better allocation factor for determining property quantities than economic use. Rates paid by the railroads for use of the private cars vary with each type of car and a car-mile allocation would not recognize the revenue productivity of the different types of car.

"Revenue derived from car-miles is available for both system and state and is considered the most reliable of the available economic factors. These statistics are available from company reports. The system figure can be verified approximately by multiplying average rates by the system car-miles. The state figure can be verified by railroad reports of payments.

"Since the revenue from car-miles is the only economic factor available, it is assigned the remaining 25% weighting in the allocation factor."

The plaintiff offered testimony tending to show that all the cars in use were leased and that some payments by the lessees were made on a per diem basis and others on a mileage basis, that there was no way to determine which cars in a given state were in one category or the other but, on a system basis, some 64 percent of the revenues were attributable to per diem earnings. (In this connection, the plaintiff calls attention to another statement of the Report, WSATA 1960, *supra,* at 39, which states that idle cars, awaiting loads, are contributing nothing to the earning power of the total properties. Plaintiff points out that this is not wholly true in the present case inasmuch as more than half of the cars, on a per diem contract, are earning revenues for the plaintiff whether they are active or not.)

The defendant, too, relies upon the recommendations in the WSATA 1960 Report, *supra.* Note is taken of the statement, at 39, that "economic or use factors" include: (a) Car-miles, (b) Revenues derived from car-mile earnings, (c) Revenues derived from car leases, and (d) Loaded ton-miles. This is followed by the comment:

"The revenues derived from leases and the loaded ton-miles are statistics available only on a system basis so they must be rejected as unusable for an interstate allocation factor."

This would leave for consideration the car-miles and the loaded ton-miles but, in the present instance, the latter is not significant because the revenues of the plaintiff are not affected by loads.

While the report indicates that car-miles is a better allocation factor for determining property quantities in economic use, it does not reject the use of car-miles (which is the same as "wheelage").

An examination of defendant's work sheet (Plaintiff's Exhibit 3) shows that wheelage was actually used by the defendant to determine a ratio which was applied against the system's operating revenue in order to attribute to Oregon the same percentage of operating revenue, on the assumption that the relationship of wheelage and revenue was sufficiently uniform as to be acceptable for the purposes of the formula.

This did not add 52 more cars to the state's property quantity; it added to the bare property a "going concern" value. The result seems tenable. *Cf. Union Tank Line Co. v. Wright,* 249 US 275, 39 S Ct 276, 63 L Ed 602 (1919); *Norfolk & Western R. Co. v. Missouri Tax Com.,* 390 US 317, 88 S Ct 995, 19 L Ed2d 1201 (1968). In view of the plaintiff's confessed inability to give a more accurate breakdown, there seemed no other alternative for the defendant if it was to use an economic factor in its formula, as it regularly does.

The defendant's witness testified that the Utility Section of the Department of Revenue was unable to develop the allocation factor exactly as recommended by the WSATA 1960, *supra,* because of plaintiff's inability to supply detailed information concerning its actual revenues from its properties operating in Oregon. (There was no evidence that the plaintiff withheld information, only that it was unable to break down for Oregon the difference in revenues attributable to its two types of contracts, per diem and car-miles.) Of necessity then, the defendant adopted the

reasonable assumption that total revenue earned by plaintiff's cars operating in Oregon was proportional to mileage in the state, as compared to system mileage.

█ Plaintiff offered no witnesses of its own, depending on the defendant's witnesses to make its case. It was not enough. It has hypothesized that the second part of defendant's formula, ipso facto, is indefensible, but no cases have been found to support this and, viewed in toto, the formula is not patently unfair. Plaintiff has offered alternative formulas but has not convinced the court that any is superior to that used by defendant, considering the facts of the present case.

The court concludes that the plaintiff has failed to meet the burden of proof through a preponderance of the evidence as required by ORS 305.427. See also *Norfolk & W. R. Co. v. North Carolina,* 297 US 682, 56 S Ct 625, 80 L Ed 977 (1936).

The order of the defendant is affirmed.