# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CT-00745-SCT

*THOMAS TRUCK LEASE, INC. AND GIBSON CONTAINER, INC.*

*v.*

*LEE COUNTY, MISSISSIPPI, BY AND THROUGH ITS FORMER TAX COLLECTOR, J.E. (BILL) MITCHELL AND HIS SUCCESSOR IN OFFICE, CHARLES DILLARD*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/20/95 |
| TRIAL JUDGE: | HON. TIMOTHY E. ERVIN |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | ROBERT L. WELLS |
| ATTORNEY FOR APPELLEE: | WILLIAM M. BEASLEY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 9/30/1999 |
| MOTION FOR REHEARING FILED: | 10/29/99; denied 01/27/2000 |
| MANDATE ISSUED: | 2/3/2000; amended 11/2/2000 |

## EN BANC.

## PITTMAN, PRESIDING JUSTICE, FOR THE COURT:

¶1. J.E. (Bill) Mitchell, in his capacity as Lee County Tax Collector, filed suit against Thomas Truck Lease, Inc. (Thomas) and Gibson Container, Inc.(Gibson) in the Lee County Chancery Court in 1991, claiming that the defendants owed ad valorem taxes. After a trial the chancery court found that Thomas and Gibson owed $246,078.78 in ad valorem taxes to Lee County and entered judgment accordingly. Thomas and Gibson appealed this final judgment to this Court, which assigned the case to the Court of Appeals. The Court of Appeals affirmed the judgment of the chancery court. This Court granted certiorari to consider the constitutional implications of the taxes levied in this case. After consideration, we find that the taxes are constitutional, and we affirm the judgment of the Court of Appeals.

## FACTS AND PROCEEDINGS BELOW

¶2. Gibson Container, Inc. (Gibson), an Arkansas corporation, is a manufacturer and distributor of cardboard boxes. During the period relevant to this action, all of its administrative and production facilities were located in Lee County, Mississippi. Thomas Truck Lease, Inc. (Thomas), is an Alabama corporation, engaged in the business of leasing tractor trucks. Its principal place of business is maintained in Columbus, Lowndes County, Mississippi. It also has an office in Alabama.

¶3. On March 14, 1988, Thomas entered into a lease contract with Gibson and under which Thomas was to lease to Gibson for a four-year period several vehicles (tractor trucks) to use in the distribution of Gibson's product. These vehicles all carried Alabama license tags. Thomas owned land and a building in Lee County, where it maintained, fueled, repaired and stored or garaged all the trucks it leased to Gibson. Generally, all of Gibson's trucks were within the Thomas compound at the end of each day. None of the vehicles were ever stored at Thomas's Alabama location or at Gibson's Arkansas office. Approximately 50% of the miles traveled by the trucks in question was in Mississippi.

¶4. In Paragraph 5A of the lease contract, Thomas specifically agreed "to provide or pay for the state motor vehicle license for the licensed weight shown on schedule A and personal property taxes for each vehicle in the state of domicile. . . ." The agreed domicile for the leased vehicles, as set out in schedule A of the lease contract, was Tupelo, Mississippi. Under the lease contract, Thomas agreed to indemnify Gibson for any loss as to the tax question raised in this case.

¶5. J.E. "Bill" Mitchell, as Tax Collector of Lee County, Mississippi, subsequently demanded payment from Thomas of ad valorem taxes on the vehicles leased by it to Gibson, and domiciled in Lee County, Mississippi. Taxes, penalties and interest were assessed against Thomas for the years 1988-89, 1989-90, and 1990-91. The ad valorem tax was assessed against 30% of the value of the trucks. *See* Miss. Code Ann. § 27-35-4(3)(1995). When Thomas failed to pay the taxes, Mitchell filed suit in Lee County Chancery Court in February 1991. Thomas defended on the basis that (1) the vehicles in question were not domiciled in Lee County; (2) Mississippi was a member of the International Registration Plan ("IRP"), an interstate treaty, and that all ad valorem taxes owed were paid under this plan in the State of Alabama where the defendant was domiciled; (3) the tax was unapportioned and violated the Commerce Clause of the U.S. Constitution; and (4) Thomas was entitled to tax amnesty under Miss. Code Ann. § 27-19-11.

¶6. At trial three IRPs, or Plans, were introduced: Exhibit 9, shown as reorganized and adopted in April 1988 and dated October 1992, apparently the Plan in use by the Tax Commission at the time of the trial; Exhibit 43, shown as adopted September 13, 1973 and revised as amended March 1, 1984, the plan which had preceded Exhibit 9; and Exhibit 8, shown as being reorganized and adopted April 1988. Exhibit 8 was different than Exhibit 9 in that Exhibit 8 defined base jurisdiction for a rental vehicle in Article II Section 1111 as "the jurisdiction from or in which the vehicle is most frequently dispatched, garaged, serviced, maintained, operated or otherwise controlled." The same section in Exhibit 9 states:

> The 'base jurisdiction' definition in Section 210 of Article II applies under this Article and the conditions therein specified must be met by the rental company as registrant of the fleet; except where the rental agreement is for more than sixty (60) days, the rental customer must have an established place of business and his fleet must accrue miles in the jurisdiction selected as the base jurisdiction for the registration year.

Section 210 under Exhibit 8 and 9 is worded as follows:

> "Base jurisdiction" means, for purposes of fleet registration, the jurisdiction where the registrant has an established place of business, where mileage is accrued by the fleet and where operational records of such fleet are maintained or can be made available in accordance with the provisions of Section 1602.

¶7. At trial, W.L. Burkes, department supervisor in charge of supervising apportionment, or the International Registration Plan, for the Mississippi State Tax Commission, testified as to how the IRP

operated in Mississippi. Burkes stated that his supervisor, in 1983, showed him what was supposedly a signed document of when Mississippi entered the IRP. It was his understanding that it was signed by the Attorney General. Burkes had never received a copy of the document and possessed no documents which indicated that Mississippi had adopted the IRP. Burkes said the plan itself showed an entry date of November 1, 1975. Burkes had never received a copy of Exhibit 8. Burkes also had no document stating that the current plan, Ex. 9, and its amendments, had been adopted by the appropriate state officials.

¶8. At trial, Frank McCain, Director of the Revenue Bureau of the Mississippi State Tax Commission since 1984, testified that he oversaw the general administration of the International Registration Plan. McCain also served on the Board of Review for taxpayer appeals. Both McCain and Burkes, and the parties for that matter, agreed that the State Tax Commission, properly adopted or not, had been operating under the IRP since 1975.

¶9. The chancery court found that the trucks were taxable property, domiciled in Lee County, and as such, Lee County was justified in collecting an ad valorem tax on the trucks. The court found that the tax did not violate the Commerce Clause of the Constitution. The court noted that the State of Mississippi imposed a number of taxes on motor vehicles:

> For ease of collection, ad valorem taxes on motor vehicles are paid annually at the same time that a license or tag is purchased. The law in Mississippi, for a number of years, has required a resident operating a tractor-trailer truck to pay ad valorem taxes in the county where the 'owner' was located, and then obtain his license or tag from the State Tax Commission on an apportioned basis if used in interstate commerce. Out-of-state or 'foreign registered' vehicles only pay their apportioned share of road, bridge, use and privilege taxes.

The court found that Thomas was being treated the same as "all resident domiciled entities that keep and use property subject to ad valorem taxation in Lee County, Mississippi." The court noted that the rationale of the Commerce Clause argument was that an interstate instrumentality should not be subjected to more than one tax on its full value. The court stated that this was not happening, as other taxes such as road use were being apportioned. The chancery court also noted the existence of the International Registration Plan, but stated that this was irrelevant to the fact that the trucks in question had been wrongfully registered in Alabama. The court further found that Thomas failed to prove that Mississippi had legally entered into any such plan under Miss. Code Ann. § 27-19-143. The chancery court entered judgment in favor of Lee County for $246,078.78.

¶10. A divided Court of Appeals affirmed. The majority agreed with the chancery court's findings as to the domicile of the trucks in question was Lee County, based on the facts of the case and the contract between Gibson and Thomas. The majority further found that there was insufficient proof that Mississippi had joined the International Registration Plan, or which of several plans was the actual Plan in question.

¶11. The two dissenting opinions both found that the taxation scheme which Lee County was attempting to apply to Thomas and Gibson was unconstitutional. The second dissenting opinion attempted to find a constitutional interpretation of the statutes, stating that Thomas had acted legally, and because it had tagged its trucks in Alabama and paid an ad valorem tax there, there was nothing in the Mississippi statutes which required it to pay such a tax, however apportioned, in this State. All parties agree that the taxing scheme which led to this case was amended in 1993 to eliminate this problem.

## DISCUSSION OF LAW

¶12. "Our limited review of the chancellor's findings of fact is the familiar manifest error/substantial evidence rule. We review law application de novo and our scope of review is plenary." *Mississippi State Tax Com'n v. Medical Devices, Inc.*, 624 So.2d 987, 989 (Miss. 1993).

¶13. Thomas's argument is that until the tax laws were amended in 1993, the state's tax laws were discriminatory against trucks traveling in interstate commerce. Thomas states that this was not a problem because the application of the laws resulted in trucking companies tagging their trucks in another state, and then paying an apportioned road and bridge privilege tax in this state, thus avoiding the ad valorem tax. According to Thomas, this was done under the IRP. Thomas emphasizes that it had offices in Alabama, tagged its trucks in Alabama under the IRP, paid its unapportioned ad valorem tax in Alabama, and then paid the apportioned tax of all other applicable states through the Alabama offices in charge of IRP.

¶14. Lee County's argument is that by statute (Miss. Code Ann. § 27-19-3) and contract the domicile of the trucks was in Lee County, and whatever Thomas Truck did outside the State of Mississippi in an effort to avoid Mississippi ad valorem taxes is irrelevant to its effort to collect those taxes. Section 27-19-3 states in part:

> Leased vehicles shall be considered as domiciled at the place in the State of Mississippi from which they operate in interstate or intrastate commerce, and for the purposes of this article shall be considered as owned by the lessee, who shall furnish all insurance on the vehicles and the driver of the vehicles shall be considered as an agent of the lessee for all purposes of this article.

Lee County argues that the ad valorem tax is properly apportioned, because Mississippi, as any other state, can impose the tax on property domiciled within its borders.

¶15. This Court described the International Registration Plan in *Mississippi State Tax Com'n v. Trailways Lines, Inc.*, 567 So.2d 228, 229 (Miss. 1990) as follows:

> The IRP is a multi-state proportional registration agreement for vehicles. Under the IRP, vehicle registration fees are apportioned among the member states in which the vehicle travels. The fees paid to each state are based on an apportionment formula. The formula is determined by computing the percentage of miles traveled in the state as compared to the total miles traveled throughout the country. For example, if a vehicle traveled a total of 10,000 miles and 1,000 of those miles were in Mississippi, the apportionment formula would be 10%. Thus, the owner of the vehicle would be required to pay 10% of the registration fee normally due in Mississippi.

> Prior to the adoption of the IRP, a vehicle traveling through Mississippi was required to pay the full registration fee unless the State had a reciprocity agreement with the vehicle's base jurisdiction. If a reciprocity agreement existed, the vehicle paid the full registration fee due in its base jurisdiction, and Mississippi received nothing.

¶16. Thomas asserts that the ad valorem tax in question is unconstitutional based upon the Commerce Clause of the United States Constitution, specifically the "fairly apportioned" prong of the four-part test laid out in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (U.S.Miss., 1977). Thomas's reliance upon *Complete Auto* and the issue of fair apportionment is completely misplaced in this specific instance. This case is clearly one of state statutory application and is

not controlled by the Commerce Clause. The ability of the state to levy an ad valorem property tax against property, whether or not engaged in interstate commerce, domiciled within the state is without dispute. ***See [Northwest Airlines v. State of Minnesota](), 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283 (U.S.Minn., 1944)***; ***See also [People of State of New York ex rel. New York Cent. & H.R.R. Co. v. Miller](), 202 U.S. 584, 26 S.Ct. 714, 50 L.Ed. 1155(U.S.N.Y., May 28,1906).*** The fact that a case decided over fifty years ago is still controlling evidences that the law in this area is well settled.

¶17. In *Northwest*, the state of Minnesota sought to assess a property tax against a fleet of airplanes domiciled in Minnesota and engaged in interstate commerce. Northwest argued that the Commerce Clause barred the application of this personal property tax. Justice Frankfurter, writing for the plurality, found that the tax was:

> . . . not a charge laid for engaging in interstate commerce or upon airlines specifically; it is not aimed by indirection against interstate commerce or measured by such commerce. Nor is the tax assessed against planes which were 'continuously without the state during the whole tax year,' New York Central & H. R. R., Co. v. Miller, 202 U.S. 584, 594. . . .

*Northwest*, 322 U.S. at 294. Justice Frankfurter went on to assert that the relationship between Northwest and Minnesota was the constitutional foundation upon which the taxing power of Minnesota was based. *Id*. The taxing situs or permanent location was the decisive factor, and thus, the doctrine of tax apportionment was not applicable in this instance. *Id.* at 295-7.

¶18. Further, the Court held that the power of the domiciliary state to levy property taxes is not abridged even if Northwest paid some property tax on the full value of the instrumentality in another state. 322 U.S. at 295. Nor would the fact that an instrumentality did not spend all of its time in one state affect the rights of the domiciliary state:

> Surely, the power of the State of origin to 'tax its own corporations for all their property within the state during the tax year' cannot constitutionally be affected whether the property takes fixed trips or indeterminate trips so long as the property is not 'continuously without the state during the whole tax year'. . . .

322 U.S. at 299 (quoting *New York Central*, 202 U.S. at 594).

¶19. The taxing power of the domiciliary state has a very different basis from the constitutional basis for tax apportionment in situations focusing on interstate commerce. The power of the domiciliary state derives from the simple and uncontroverted fact that it is the state of domicile, a privilege enjoyed by no other state. 322 U.S. at 297.

¶20. The reasoning used in *Northwest* is applicable in the instant case. Mississippi as the domiciliary state has the right as such to levy an ad valorem property tax against Thomas. The fact that the tractor trucks were engaged in interstate activity is irrelevant. Likewise, the argument that the ad valorem tax is not fairly apportioned is without merit. Justice Frankfurter makes the point well:

> To introduce a new doctrine of tax apportionment as a limitation upon the hitherto established taxing power of the home State is not merely to indulge in constitutional innovation. It is to introduce practical dislocation into the established taxing systems of the States. . . .

*Northwest*, 322 U.S. at 299-300. The present case is strictly one of Mississippi statutory application and does not in any way encroach upon the rights guaranteed by the Commerce Clause.

¶21. Even assuming arguendo that the constitutionality of the ad valorem tax must be analyzed under the Commerce Clause, the tax is constitutional. It should be noted that the ad valorem tax in question would only be scrutinized under the Commerce Clause if the "true value"[1] of the instrumentality (tractor truck) was determined based upon receipts from interstate commerce. If such receipts were considered in setting the "true value" of the instrumentality, then the ad valorem tax would be tested for fair apportionment concerning the out-of-state receipts derived from interstate commerce. *See Railway Exp. Agency v. Com. of Va.*, 347 U.S. 359, 74 S.Ct. 558, 98 L.Ed. 757 (U.S.Va., 1954).

¶22. Thomas did not contend that the ad valorem tax was not fairly apportioned based upon the setting of the "true value" of the tractor trucks. For this reason, no evidence was presented showing how such "true value" was determined.

¶23. Thomas argues that Lee County's attempt to collect the ad valorem tax in question is unconstitutional. It cites *Complete Auto* for the following four- part test which must be met in order for a tax to survive a Commerce Clause challenge. The tax must be:

> (1) applied to an activity with a substantial nexus with the taxing state;
>
> (2) fairly apportioned;
>
> (3) non-discriminatory against interstate commerce, and
>
> (4) fairly related to the services provided by the state.

Thomas stated that only (2), fair apportionment, is at issue here. The United States Supreme Court discussed the apportionment requirement in *Goldberg v. Sweet*, 488 U.S. 252, 260-62, 109 S.Ct. 582, 102 L.Ed. 607 (U.S.Ill., 1989):

> [T]he central purpose behind the apportionment requirement is to ensure that each State taxes only its fair share of an interstate transaction. *See, e.g., Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 169 (1983). But "we have long held that the Constitution imposes no single [apportionment] formula on the States," *Id.*, at 164, and therefore have declined to undertake the essentially legislative task of establishing a "single constitutionally mandated method of taxation." *Id.*, at 171; *see also Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 278-280 (1978). Instead, we determine whether a tax is fairly apportioned by examining whether it is internally and externally consistent. *Scheiner, supra*, 483 U.S., at 285; *Armco Inc. v. Hardesty*, 467 U.S. 638, 644 (1984); *Container Corp., supra*, 463 U.S., at 169-170.
>
> To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result. 463 U.S., at 169, 103 S.Ct., at 2942. Thus, the internal consistency test focuses on the text of the challenged statute and hypothesizes a situation where other States have passed an identical statute. . . .
>
> . . . .

The external consistency test asks whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed. *Container Corp., supra*, 463 U.S., at 169-170. We thus examine the in-state business activity which triggers the taxable event and the practical or economic effect of the tax on that interstate activity. . . .

¶24. Miss. Code Ann. § 27-19-11 provides for a highway privilege tax to be levied on carriers of property (tractor trucks) in accordance with a set schedule based on weight. This highway privilege tax is also known as a road and bridge privilege license tax. Miss. Code § 27-51-7 provides that anyone who must pay a road and bridge privilege tax license on any motor vehicle must also pay an ad valorem tax on that motor vehicle as well. These statutes must be viewed in conjunction with § 27-19-57, which states in part:

All persons required to pay the privilege license prescribed by this article shall register their private or commercial vehicle and pay such tax in the county in which such vehicles are domiciled or the county from which such vehicles most frequently leave and return.

¶25. The internal consistency test asks would multiple taxation occur if every state had the same law as Mississippi, an ad valorem tax on property domiciled within the state. The answer is no. Since vehicles can only be domiciled in one location, the result would be only one tax, not multiple taxation. The problem has arisen in this case because Mississippi, in the case of trucks, had at the pertinent time a higher ad valorem tax than other neighboring states. Thomas attempted to escape that by tax tagging its fleet in Alabama. If there was multiple taxation, it was caused by Thomas and not by any unfairness in the Mississippi law.

¶26. Although the ad valorem tax may be internally consistent, it must also satisfy the test for external consistency. To be externally consistent, a state can tax "only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Goldberg*, 488 U.S. at 262. This is essentially a test focusing on the "practical or economic effect of the tax on that interstate activity."*Id.* At its simplest, the inquiry for external consistency is whether the state collected too much money in this specific instance. We find that a tax against 30% of the value of trucks traveling approximately 50% of their miles in Mississippi reasonably reflects the in-state component of the activity being taxed. We find that the tax in question meets the test of *Complete Auto*.

¶27. Thomas and Gibson failed to prove that this State formally entered into any International Registration Plan. Miss. Code Ann. § 27-19-143 (1995) states:

The Chairman of the State Tax Commission or any individual or agency who, or which, shall accede to his duties, the Attorney General and the Governor are hereby authorized and empowered to negotiate, enter into and promulgate reciprocity agreements and compacts with other states and the Dominion of Canada or its provinces, through their respective enforcement divisions, concerning the operation of all motor vehicles, properly registered in such other state upon and over the public highways of the State of Mississippi, in foreign or interstate commerce, without the payment of the privilege license tax provided for in this article, provided that the state with which such agreement is entered into extends like privileges to vehicles properly registered in the State of Mississippi; and provided further, that such agreements or compacts shall not suspend any laws, rules or regulations of this state other than the requirements of the payment of the privilege license tax provided for in this article by residents of such other states.

It is further provided that the Chairman of the State Tax Commission or any individual or agency who, or which, shall accede to his duties, the Attorney General and the Governor may likewise enter into agreements with the duly authorized representatives of other jurisdictions relating to the proportional registration of commercial vehicles in interstate or combined interstate and intrastate commerce. The apportionment may be made on a basis commensurate with and determined on the miles traveled on and use made of the highways of this state as compared with the miles traveled on and use made of other jurisdictional highways or any other equivalent basis of apportionment. It is also provided that the Chairman of the State Tax Commission or any individual or agency who, or which, shall accede to his duties, may collect proportional registration fees due other member jurisdictions and deposit such fees in a special holding fund until the fees may be properly distributed by the Chairman of the State Tax Commission or any individual or agency who, or which, shall accede to his duties, to the jurisdiction, including Mississippi, for which such fees have been collected. The Chairman of the State Tax Commission or any individual or agency who, or which, shall accede to his duties, the Attorney General and the Governor may adopt and promulgate such rules and regulations as shall be necessary to effectuate and administer the provisions herein contained.

It is further provided that the terms of all reciprocity agreements or compacts entered into under the provisions of this section shall, insofar as they relate to common or contract carriers of property, private commercial carriers of property, or common or contract carriers of passengers, be based upon the terms and provisions of Sections 27-61-1 through 27-61-29, and no person shall be entitled to the benefit of the terms and provisions of such agreements and compacts unless and until he fully complies with the requirements, terms and provisions of said Sections 27-61-1 through 27-61-29. The Chairman of the State Tax Commission or any individual or agency who, or which, shall accede to his duties, Attorney General and Governor shall have the power to cancel and abrogate any agreements or compacts entered into under the terms of this section or under any other law heretofore effective, by giving thirty (30) days' notice, in writing, to the enforcement authority of the state with which such agreement was entered into.

The State Tax Commission employees who testified in this case were unable to present documentary evidence showing that § 27-19-143 had been complied with as to the IRP. Given this failure of proof, the IRP claim asserted by Thomas and Gibson is without merit.

## CONCLUSION

¶28. We find no error in the Court of Appeals' decision. The judgment of the Court of Appeals is affirmed.

¶29. **AFFIRMED.**

**SULLIVAN, P.J., McRAE, WALLER AND COBB, JJ., CONCUR. PRATHER, C.J., DISSENTS WITH SEPARATE WRITTEN JOINED BY BANKS, SMITH AND MILLS, JJ.**

**PRATHER, CHIEF JUSTICE, DISSENTING:**

¶30. It is my view that the law applicable to the present case permitted Thomas Trucking to register its vehicles in Alabama without being subjected to Mississippi taxes during the years 1988-91, and I must

therefore respectfully dissent.[(2)] This Court is interpreting a statutory scheme that no longer exists. Whatever the interplay might have been prior to July 1, 1993, between the *ad valorem* taxation statutes, the motor vehicle registration statutes, certain interstate compacts, and the other relevant rules, those relationships have been supplanted by the present version of Mississippi Code Sections 27-19-11 (privilege taxes), 27-51-41 (exemptions) and other statutes.

¶31. Nevertheless, as will be seen, the nature of the 1993 statutory amendments strongly suggests that, prior to these amendments, Thomas Trucking was within its rights in choosing to tag its trucks in Alabama in order to escape the higher Mississippi rates. It is apparent that the Legislature saw fit to modify the law which led to this practice, but Thomas Trucking was within its rights in relying on the law as it existed at the time.

¶32. Before discussing the 1993 amendments, I will first address the constitutional issues. The Lee County Tax Collector alleges here that the tax is constitutional because it is assessed only on 30% of the full value of the vehicles. This assessment arises from statute, whereby all motor vehicles are assessed at that percentage. Miss. Code Ann. § 27-35-4(3) (1995) (rate of assessments). This certainly is not an apportionment. It appears that the Tax Collector is not arguing that it is. All motor vehicles, whether interstate or intrastate in their use, are assessed at that percentage.

¶33. Whatever the assessment percentage, the constitutional problem arises from an interstate vehicle being subjected to higher taxes than its intrastate "cousins." Vehicles pay the same taxes based on the same percentage assessment in Mississippi, but Thomas Truck's vehicles are also subject to taxation elsewhere. Interstate vehicles being assessed at the same percentage of full value as intrastate vehicles means that the interstate vehicles are subject to multiple and higher taxation in the total number of jurisdictions that have power to tax them. That is the constitutional defect.

¶34. If it is possible "a court should construe statutes so as to render them constitutional . . . after first resolving all doubts in favor of validity." *City of Oxford v. Northeast Mississippi Elec. Power Ass'n.,* 704 So. 2d 59 (Miss. 1997)(quoting *Loden v. Mississippi Public Serv. Comm'n,* 279 So.2d 636, 640 (Miss. 1973)). The construction must not give violence to the words, but must be a reasonable interpretation of the intent of the legislature. *Grace v. Department of Human Serv.,* 687 So. 2d 1232, 1234 (Miss. 1997). The majority concludes that, if Mississippi is the domiciliary State for the vehicles in question, then we can properly ignore the taxing authority that other States have regarding them. Since I find that the majority's interpretation would make this statute unconstitutional, I discuss what I find to be the reasonable and constitutionally valid interpretation of the statute.

¶35. The tax obligation in the present case arose from this language: "[a]ny person required by law to pay a road and bridge privilege tax on any motor vehicle shall also be liable for the *ad valorem* taxes due on such motor vehicle, unless otherwise specifically exempted herein." Miss. Code Ann. § 27-51-7 (1995) (persons liable for *ad valorem* taxes.) Determining the county of domicile of a vehicle does not define the obligation, but merely establishes where the taxes are paid if they are due. *See also* Miss. Code Ann. § 27-19-57 (1995) ("persons required to pay the privilege license prescribed by this article shall register their . . . vehicle and pay such tax in the county in which such vehicles are domiciled . . . ."). If the privilege license must be purchased and the owner acquires one in the wrong county, a penalty is assessed. *Id.*

¶36. The road and bridge privilege tax obligation is the next element of the analysis. Only if Thomas Trucking were required by law to pay Mississippi's road and bridge privilege tax could it be made to pay

Lee County's *ad valorem* tax. When the privilege tax is paid, the vehicle is issued a license plate or a decal for an existing plate signifying the privilege of operating the vehicle for a year. Miss. Code Ann. §§ 27-19-11 & 27-19-31 (1995). It is here that Thomas Trucking and the county join issue: did Thomas Trucking have to tag its vehicles in Mississippi?

¶37. One of the previously applicable statutes established the amount of the highway privilege tax, but the statute did not define who was to pay it. Its language was only that on "each carrier of property, for each motor vehicle, truck-tractor or road tractor used in the operation of any business as such, there is hereby levied an annual highway privilege tax" in accordance with the fee schedule that followed. Miss. Code Ann. § 27-19-11 (Supp. 1987)(codifying 1987 Miss. Laws ch. 322, § 21).

¶38. In fact, the parties have pointed us to no statute that specifically defines which vehicles are to pay the road and bridge privilege tax. To operate on the roads of Mississippi motor vehicles must be tagged somewhere. Vehicles entering the State briefly to take advantage of Mississippi attractions do not pay our tax. Other vehicles whose drivers do not stop at all do not pay our tax. The tax collector no doubt assumes that such transient vehicles domiciled elsewhere do not pay the tax, but that any vehicle that arguably is domiciled here has to pay Mississippi's road and bridge tax. Such payment then obligates a payment of the *ad valorem* tax.

¶39. However, I find no such rule in the statute. Could the owner of a vehicle that is principally located in Alabama pay the highway and bridge privilege tax in Mississippi and be issued a tag? There is nothing in the statute that prevents it. In our case, the opposite happened. A Mississippi-domiciled vehicle was tagged in Alabama. What Thomas Trucking needed for its vehicles was a tag or license. By not getting such a tag in Mississippi but instead acquiring one in Alabama, Thomas Trucking argues that it fulfilled its obligations for operating on Alabama, Mississippi and all other highways. If that is true, that is, if Thomas Trucking validly avoided paying the Mississippi road and bridge privilege tax, then it also had no *ad valorem* tax obligation.

¶40. To address whether this was a permissible reading of the statutes, Thomas Trucking sought to introduce evidence of prior attorney general and tax commission views on this issue. The chancellor did not err in refusing to admit into evidence a withdrawn 1970 attorney general opinion, but the opinion contained a legal argument that the chancellor should have been willing to consider. Moreover, Thomas Trucking could, and did, make the same legal arguments to the chancellor as were contained in the withdrawn opinion letter.

¶41. The testimony of Frank McCain, State Tax Commission Revenue Director, would have discussed the history of taxation in this area. The State Tax Commission is the agency empowered to interpret and apply the relevant law. Miss. Code Ann. § 27-19-1 (1995). ("The State Tax Commission . . . is hereby vested with the sole power . . . of administering and enforcing the terms" of the Motor Vehicle Privilege Tax Act.) I find it to be error for the chancellor to have declined to receive an explanation as to how the Commission had interpreted the taxing scheme.

¶42. When the relevant statutes say nothing explicit about the key issue in the litigation, namely, who has to pay the tax in question, then it is my view that the chancellor should have been looking for additional evidence from any relevant source. The proffer that was made through McCain discussed the interpretation of these statutes regarding "the appropriate jurisdiction into which a trucking company would be required to purchase its base plate" or tag. As part of that testimony, McCain mentioned the reciprocal agreements that could be entered between Mississippi and other States pursuant to the "International Registration Plan." *See*

Miss. Code Ann. § 27-19-143 (1995) (reciprocity agreements.)

¶43. McCain testified that Mississippi entered into this plan on November 1, 1975. Under the IRP, a trucking company could buy a tag in a State in which it had a telephone, some truck mileage, accessible records, and a person conducting the business. By 1987, McCain and others at the tax commission became aware that trucking companies were using the IRP to permit selecting the most advantageous State in which to purchase a tag. Alabama won out over Mississippi in Thomas Trucking's situation. The bridge and license fee it paid there was apportioned between States based on mileage.

¶44. Beginning in 1987, McCain and the commission sought corrective legislation to apportion *ad valorem* taxes among States based on mileage traveled within each State. What was needed and what was finally acquired was a statutory scheme that replaced an unapportioned *ad valorem* tax based on where a vehicle was tagged, to an apportioned scheme based on miles traveled. Miss. Code Ann. § 27-19-11, 27-19-143 & 27-51-41 (1995). McCain testified that a large number of trucking companies did what Thomas Trucking did, and a statutory change was pursued by the tax commission to correct the resulting taxation shortfall to Mississippi.

¶45. It is my view that the previous version of the applicable statutes permitted a business such as Thomas Trucking to choose the State in which to be licensed. Since it is the payment of the road and bridge privilege tax that creates the *ad valorem* tax obligations, proper payment in Alabama under the previous version of the statutes meant that there was no *ad valorem* tax to pay in Mississippi.

¶46. In summary, none of the statutes then in existence explicitly required that all vehicles domiciled in Mississippi be tagged in Mississippi. The statutes did require that a vehicle tagged in Mississippi pay an unapportioned *ad valorem* tax. The reasonable interpretation of these two facts is that there was no requirement that a vehicle licensed in another State also be licensed here. Such an obligation, by also creating an unapportioned *ad valorem* obligation, would have been unconstitutional. I find in the silence of the Legislature on this point no intent that is being overridden. I would reverse and render, and I must respectfully dissent.

## BANKS, SMITH AND MILLS, JJ., JOIN THIS OPINION.

1. An ad valorem tax assessed against 30% of the true value of the tractor truck is to be levied as required by Miss. Code Ann. § 27-35-4(3). The true value is to be determined using a combination of three approaches set out in Miss. Code Ann. § 27-35-50(2).

2. This dissent incorporates many of the arguments and language set forth in Court of Appeals Judge Southwick's dissent.